T. N. BROWN AND HOWARD BROWN, COPARTNERS DOING BUSINESS UNDER THE FIRM NAME OF BROWN MOTORS, APPELLANTS, *v.* CLAUDE T. LINDSAY AND RAY T. LINDSAY, COPARTNERS DOING BUSINESS UNDER THE FIRM NAME OF MOUNT ROSE LUMBER COMPANY, RESPONDENTS.

No. 3618

March 6, 1951. 228 P.2d 262.

*John S. Halley,* of Reno, for Appellants.

*Cooke & Cooke,* of Reno, and *W. G. Harmon,* of San Francisco, California, for Respondents.

## OPINION

By the Court, MERRILL, J.:

This is an appeal from judgment of the Second judicial district court of the State of Nevada in and for the county of Washoe in favor of respondents in the sum of $5,526.43, plus costs, and from order of that court denying motion for new trial. The questions involved have to do with the sufficiency of the evidence to support court findings of negligence and damages.

Respondents (plaintiffs below) were copartners who operated a saw mill at Reno and carried on logging operations on government lands. In 1944, under government contract, they engaged in operations in Sierra County, California. They employed nine or ten men in this operation and various items of logging equipment including two tractors, one of which was used exclusively for skidding logs and the other largely for road making.

The amount of timber in the area was limited. By early September, 1945, they had concluded that it would not be practical to operate in the area for another season and had determined to make every effort to get out all logs during the 1945 season. To that end they had arranged to rent a third tractor from the Isbell Construction Company of Reno to be used for road making, enabling them to use both of their own tractors exclusively for logging. This, they felt, would almost double their output and permit them to complete operations in that area before winter set in.

Just before the rented tractor was due, one of their own tractors, an International, required clutch repair.

Appellants (defendants below) were Reno agents for International Harvester Company, manufacturer of the International tractor. Their foreman in charge of tractor service, Christensen, was a trained and experienced mechanic, schooled at the factory on the mechanism of the International tractor.

Respondent Ray T. Lindsay went to appellants' service department in Reno, was referred to Christensen, and arranged with him to go to the scene of their logging operations and there make the necessary repairs. The nature of the difficulty was explained to him and also the need for immediate action. Lindsay explained that they were depending on production of that tractor to keep their mill going, that any delay might mean shutdown of the mill and would prevent trucking and logging crews from operating to capacity.

On September 15, Christensen, with one helper, set out for the scene of operations in a pickup truck. Due to the steepness of grade of the logging road they were forced to stop some distance from where the tractor was at work. The tractor was brought down the mountain by its driver, Brown, an employee of respondents, to a relatively level spot more accessible to the pickup truck, and Christensen and his helper commenced the work of repair. During the course of the repairs the tractor started to roll, could not be controlled, and plunged to the bottom of a canyon, suffering serious damage.

It is for that damage and consequent loss of use that suit was brought and judgment rendered in favor of respondents. The matter was tried before the court without a jury. In support of the judgment was a finding of negligence on the part of Christensen and his helper as cause of the accident.

Appellants first contend that there is insufficient evidence to establish that Christensen was negligent; that the evidence, on the contrary, establishes that the driver,

Brown, was at fault and that his negligence caused the accident, or at least was an important contributing factor.

In many details the evidence is in conflict. First there is dispute as to who (Brown or Christensen) was responsible for selecting the site for repairs. Certainly the site was an extremely poor one as the facts themselves demonstrate, although, coming from the extreme steepness of the logging road it seemed to both Brown and Christensen to be sufficiently level. At the very least, the testimony agrees, the tractor should have been blocked.

However, there is evidence from which it might be found that Christensen assumed the responsibility for the site of repairs and that Brown accepted his judgment in the matter. Brown testified that in bringing the tractor down the road he encountered Christensen where the pickup truck had been parked. Brown states, "He picked up his parts there, and he couldn't work there; it was a little too steep, so he motioned me on down to a level spot."

Brown went on down the road about 150 yards, then "I took the cat to this level spot, turned it around, and parked it right there above the road. * * * I said, 'Is it alright?' and he said, 'Yes,' and they went right to work on it."

Moreover, when Christensen commenced work of repair, the inherent danger, due to the site and the unblocked condition of the tractor, was as apparent to him as to Brown, if not more so in view of his training and experience. Nor can it be said that Brown withheld from him any facts which would have affected his judgment.

It is then contended by respondents that Brown was negligent in turning the tractor over to Christensen with its brakes unset. There is, however, evidence to the contrary; evidence from which the court might well have found that when Christensen commenced work the brakes were set and the gears engaged in compression.

There is, on the other hand, no dispute as to the immediate cause for the tractor's commencing to roll. This was the inadvertent disengaging of the clutch by Christensen and his helper in the course of removing the deck or floor board in order to get at the clutch mechanism. By then the brake rests had been removed by Christensen and there was no way to stop forward progress of the tractor.

Accordingly, it is the view of the court that there is sufficient evidence to support the finding of negligence on the part of Christensen and his helper.

This brings us to consideration of the question of damages. Damages allowed by the lower court were: loading and transporting the damaged tractor to and from Reno for repairs, $276; hiring a tractor for 14 days to take the place of the damaged tractor, $978; damage to plaintiffs by reason of inability to haul out 360,000 feet of logs, $3,772.43; damage to plaintiffs by shutting down mill because of failure to supply logs, $500; a total of $5,526.43. Each item is challenged by appellants upon the ground that it is unsupported by evidence.

The evidence shows that Lindsay, the day of the accident, made demand upon appellant T. N. Brown for redress; that appellant Brown disclaimed responsibility, agreeing only to repair the tractor as quickly as possible. Appellants not having facilities for getting the tractor out of the canyon to which it had plunged or for repairing it in their own shop, the tractor was taken at respondents' expense to the yard of Isbell Construction Company. Transportation of the tractor to and from its site of repair cost respondents $276. The evidence is clear as to the items which make up this total cost and as to the facts of their payment by respondents. The judgment of the lower court is sustained as to this item of damage.

The evidence shows that respondents attempted to secure a tractor to replace the damaged one but were

unsuccessful. The tractor which they had arranged to rent from Isbell Construction Company arrived and was put to work during the two-week period for which they had arranged. It could not, however, be used exclusively for road work as originally contemplated and they were forced to use it for logging as well. It was not equipped with a winch, necessary for effective logging work. Its operator, provided by Isbell Construction Company under its rental contract, was not experienced in logging. As a consequence, instead of having their output doubled as contemplated, respondents suffered a loss of output estimated at 20 percent. When winter weather forced shutting down, 360,000 feet of felled logs were of necessity left behind. Respondent Ray T. Lindsay testified that due to deterioration of the road and the necessity for making equipment available, cost of recovering those logs in 1946 or later would have exceeded the amount they might have recovered for them. Attempts were made to sell the logs on the ground but were not successful.

The lower court has allowed damages not only for the unrecovered logs but for the rent of the Isbell tractor as well. It appears from the evidence, however, that the Isbell tractor was not a substitute tractor. It was rented pursuant to respondents' original plan of increasing output through utilizing additional equipment. The 360,000 feet of logs which the court found might have been recovered but for the accident, could not have been recovered without the added help provided by the rented tractor. Had the damaged tractor been available, respondents might well have recovered those logs, but in so doing they would also have had to rent the Isbell tractor in accordance with their original plan and make those payments in rental which they did in fact make.

It is held, therefore, that the lower court was in error in granting judgment in the sum of $978 rental of the tractor from Isbell Construction Company.

As to the unrecovered logs the evidence is amply sufficient to establish that, but for the loss of respondents' tractor, they would have been recovered. The damaged tractor had, prior to the accident, been logging between 30,000 and 35,000 feet per day. During repair it was lost to the operation for 14 days of which 12 were working days. From the evidence, the tractor alone could have recovered the lost logs during that 12-day period, not to mention the increased efficiency which would have resulted from using the Isbell tractor exclusively for the road work for which it was designed.

Further, the evidence is sufficient to establish the monetary extent of the loss. The judgment granted by the lower court was based upon sums actually expended by respondents upon the lost logs for stumpage, felling, bucking, limbing and road work. Each item is supported by evidence. The judgment did not include any element of anticipated profit.

Appellants contend that had respondents properly attempted to minimize damages, this timber would not have been felled and the damage would have been avoided. Steps which a damaged party is required to take to minimize or prevent aggravation of damages are those which a reasonably prudent man might be expected to take. See 25 C.J.S., Damages, sec. 33, p. 499; 15 Am.Jur. 424, Damages, sec. 28. "'* * * the party injured is not under any obligation to use *more* than ordinary diligence. Prudent action is required, but 'not that action which the defendant, upon afterthought, may be able to show would have been more advantageous to him.' The amount of care required is not to be measured by '*ex post facto* wisdom'; and the plaintiff is not bound at his peril to know the best thing to do." 1 Sedgwick on Damages 415, sec. 221.

While the timber apparently was all felled after damage to the tractor had occurred and with full knowledge

of the reduced productive capacity of the operation, still it cannot be said that respondents were lacking in reasonable prudence in proceeding as they did. Certainly they were entitled to make every reasonable effort to get out the greatest possible footage before closing down operations. Felling operations ceased the end of October. Further logging became impossible about the middle of November. A few more days of favorable weather would have permitted full recovery. This is particularly pertinent in view of the fact that the year previous, weather had permitted a month longer operational season. To hold respondents to a greater degree of care would in effect be to demand of them a course which would eliminate all normal risks of their business. This certainly is exercise of caution to an extent which no business in a competitive field could long survive.

Appellants point out that the evidence shows that 64,000 feet of the lost logs were cut under a government contract executed after the accident occurred. They contend that respondents' entering into this new contract demonstrates lack of prudence. For all that can be learned from the record, however, this contract was no more than a government permit to cut timber for a fixed stumpage fee of so much a foot. Respondents make no claim of loss based upon unfulfilled contract obligations. If continued logging was not in itself imprudent, the fact that a new contract or permit had first to be secured will not render the action any less prudent.

The judgment of the lower court is sustained upon this item of damage.

Upon the item of $500 damage to respondents by shutting down of the mill, appellants contend that there is a complete lack of competent evidence; that the only evidence offered is uncertain, speculative and conjectural. In this regard respondent Ray T. Lindsay testified as follows: "With the loss of the tractor, we were faced with a slight decrease, as I have said, at least a 20 percent decrease in the amount of logs we were getting in,

and not having a deck of logs on hand, your mill does not operate to advantage, or at least to full advantage unless you have a steady and constant source of supply of logs. As a result of the loss of this tractor, we had periodic shortages at the mill, or times when they were just about out, and a crew of mill men do not put forth their best efforts if they can see the last log or two about to go into the mill, so that your loss in production and in efficiency at the mill was very definite, and we had estimated that at $500.00.

"Q. * * * Did the mill shut down? A. Periodically. You may have spells of a half hour, or there may be a half day maybe we wouldn't even operate the mill, and maybe use them to do other things rather than cutting lumber because of the lack of logs. * * * I believe there was a half day or so in which we didn't operate, and then there were periods of a half hour or hour during the two week period in which lost time was involved. * * *

"Q. Was there any other reason for the mill shutting down from time to time? A. There may have been. There may have been other repairs or other reasons, such as making minor repairs, but in addition to those, there was also this definite delay and loss of time due to insufficient logs.

* * * * * * *

"Q. What do you base the estimate of $500.00 that you have set up here? In what way do you reach that? A. That is based on the amount of the payroll we had per day and the loss of payroll in the production. * * * Our payroll in the mill was in the neighborhood of $250.00 or $275.00 a day.

"Q. There was a shutdown then, if I understand your testimony, of a couple of days all told on account of this shortage and supply of logs? A. Approximately, yes. It totaled up approximately a couple of days."

The rule against the recovery of uncertain damages generally is directed against uncertainty as to the existence or cause of damage rather than as to measure or

extent. See 25 C.J.S., Damages, secs. 27, 28, p. 493. From the testimony it is clear that damage was suffered. There were periodic shortages; loss in production and efficiency was very definite; there was a definite delay and loss of time due to insufficient logs. This was not the result of speculation or conjecture; this was not guesswork.

The uncertainty in the testimony applies not to the existence or cause of damage but rather to its extent or measure. Even here the uncertainty is not speculative or conjectural in character. The testimony as to the extent of damage is not based upon inference or assumption as to what may have occurred but upon recollection as to what actually did occur. In the view of this court, the extent to which that recollection was uncertain in detail will not serve to render it wholly insufficient. Accordingly there was evidence to support the finding and judgment of the lower court in this respect, and upon that item of damages the judgment is sustained.

The judgment of the lower court is modified by eliminating therefrom the item of $978 tractor rental. Judgment, as so modified, in the sum of $4,548.43 and order denying motion for new trial are hereby affirmed. The respective parties shall bear their own costs upon this appeal.

BADT, C.J., and EATHER, J., concur.

ORDER DENYING PETITION FOR REHEARING
April 3, 1951.

*Per curiam:*

The petition for rehearing, including request for modification of order with reference to costs, is denied.