J. R. CROCKETT, Sr., AND JOHN E. CLARK, APPELLANTS AND CROSS-RESPONDENTS, v. SAHARA REALTY COR- PORATION, A NEVADA CORPORATION; EMANUEL J. SCHWARTZ; AND GILBERT S. SCHWARTZ, RESPONDENTS AND CROSS-APPELLANTS.

No. 9661

March 15, 1979 591 P.2d 1135

[Rehearing denied April 18, 1979]

*Crockett & Rickdall,* Las Vegas, for Appellants and Cross-Respondents.

*Cromer, Barker & Michaelson* and *James R. Olson,* Las Vegas, for Respondents and Cross-Appellants.

## OPINION

*Per Curiam:*

The appellants brought this action against respondents to recover damages allegedly resulting from respondents' "tortious interference with appellants' prospective economic advantage", i.e., the obtaining of a commission on the sale of real property. The court below, on a motion for summary judgment, entered judgment in favor of respondents and dismissed the action. This appeal resulted.[1]

### THE FACTS

The appellants in the summer of 1974 contacted Fletcher Jones, who was interested in purchasing real property in Clark County. The case is focused on a piece of realty known as the "Harrison Parcel", upon which the appellants claim they had a verbal listing to sell from one Jack Rankin who had signed an agreement with the owner to purchase the said property. The owner, Charles Harrison, signed an exclusive listing agreement to sell the property through respondent Sahara Realty Corporation. Sahara, through its salesman Emanuel Schwartz, later sold the property to Jones and earned a commission of $45,750 on the sale. This litigation followed.

### THE MATERIAL ISSUES OF FACT

Rule 56(c), NRCP, provides that summary judgment shall be rendered if "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." On appeal, all evidence favorable to appellants must be accepted as true. Potter v. Mutual Benefit Life Ins. Co., 93 Nev. 90, 560 P.2d 914 (1977).

---

[1]Respondents have cross appealed from the court's order denying them their attorneys' fees.

Appellants, in seeking damages for the alleged tortious conduct of the respondents, rely heavily on Buckaloo v. Johnson, 537 P.2d 865 (Cal. 1975), and Harris v. Perl, 197 A.2d 359 (N.J. 1964). They concede that their cause of action is not predicated upon an enforceable contract with the seller of the property.

What appellants have overlooked in their cited authority of Buckaloo v. Johnson, *supra,* and Harris v. Perl, *supra,* is that both cases, while recognizing a cause of action by a broker against a *purchaser* of property who negotiates a direct sale, without commission, after voluntarily using the services of the broker, were careful to point out that these were not competitive (broker/broker) situations.

In *Buckaloo,* the Supreme Court of California emphasized that

> Perhaps the most significant privilege or justification for interference with a prospective business advantage is free competition. Ours is a competitive economy in which business entities vie for economic advantage. In a sense, all vendees are potential buyers of the products and services of all sellers in a given line, and success goes to him who is able to induce potential customers not to deal with a competitor. Thus, as Prosser states: "So long as the plaintiff's contractual relations are merely contemplated or potential, it is considered to be in the interest of the public that any competitor should be free to divert them to himself by all fair and reasonable means." (Prosser, Torts (4th ed. 1971), p. 954).

537 P.2d at 872. *See also,* Restatement, *Torts* § 768 (1939).

In *Harris,* the New Jersey court similarly distinguished the situations, pointing out that "Of course a broker must accept competition from other brokers." 197 A.2d at 364, citing George F. Hewson Co. v. Hopper, 33 A.2d 889 (N.J. 1943), and Weinstein v. Clementsen, 90 A.2d 77 (N.J.Super.Ct.App. Div. 1952), in support of that proposition.

In *Hewson,* the court sustained the granting of a nonsuit to defendants, including agents of the vendor and purchaser, and the broker who ultimately received the commission on the sale, when the plaintiff had alleged that all proceeded to deliberately exclude him, with full knowledge that the buyer had been plaintiff's customer. The court pointed out that "the gravamen of such a cause of action is conditioned upon the wanton, malicious and unjustifiable acts of others, and that where a loss occurs by reason of lawful competition however sharp, the loss is one for which the law affords no redress." 33 A.2d at 889.

The court in *Weinstein* also denied relief to a broker, as against the purchaser and the second broker to show purchaser the property, when it was uncontroverted that the seller told the second broker of the previous showing before negotiations were begun. The court emphasized that there was no evidence of ill-will on the part of the second broker toward the first, or of any purpose other than the competitor's economic interest. Nor was there any evidence of subterfuge or other improper means. In language appropriate to the case at hand, and to appellants' contentions, the court observed:

> The plaintiff's postulate seems to be that the broker who first "finds" a potential customer and arouses his interest in the matter which the broker is promoting, acquires an exclusive right to develop that interest into an actual business transaction. Such is not the American law of free enterprise. One sows and another reaps. One insurance salesman convinces the prospect that more insurance is advisable, and another salesman—an old friend of the prospect—writes the policy. A well-conceived advertisement of one merchant, or an able salesman, almost makes the sale but the customer decides to think it over, and next day buys the article from a competitor.

90 A.2d at 80.

In this case, appellants have neither alleged nor offered any facts from which an inference could be drawn of any resort by respondents to unlawful or improper means. *See* Restatement, *Torts, supra,* Comment (e), at 74–75. There is not, as in the purchaser situation, any suggestion that the defendants took advantage of the services of the plaintiff-appellants, and were thereby unjustly enriched. According to appellants' own view of the facts, each broker had an opportunity to sell the property to Jones during the period in question. The fact that respondents succeeded where appellants failed, with or without knowledge of their previous efforts, is not in itself a tortious act.

## THE ATTORNEYS' FEES

Respondents have filed a cross appeal, challenging the lower court's denial of their motion for attorneys' fees, based upon NRCP 68.

While the facts of this case would have allowed the court to grant attorneys' fees, there is no basis for finding that the court abused its discretion in not allowing attorneys' fees.

Therefore, the order of the trial court granting summary judgment is affirmed in all respects.