RODNEY K. BADER, LINDA BADER, ALBERT E. DIANDA, HARRIET SUE DIANDA, GARY D. BADER AND LETA BADER, Appellants and Cross-Respondents, v. LOUI CERRI and ELAINE CERRI, Respondents and Cross-Appellants.

No. 11479

April 9, 1980                                        609 P.2d 314

*Hill, Cassas, deLipkau & Erwin,* of Reno, for Appellants and Cross-Respondents.

*James Shields Beasley,* of Reno, for Respondents and Cross-Appellants.

## OPINION

By the Court, THOMPSON, J.:

On February 28, 1975, Loui and Elaine Cerri, hereinafter Cerri, by written document, agreed to sell, and Rodney K. Bader, Linda Bader, Albert E. Dianda, Harriet Sue Dianda, Gary D. Bader and Leta Bader, hereinafter Bader, agreed to purchase the Cerri Ranch in Paradise Valley, Humboldt County, Nevada. The purchase price therefor was $1,125,000 which contemplated the transfer of the real estate, grazing permits, cattle, and ranch machinery and equipment. The sale was never consummated. This action for breach of contract and damages was commenced by Cerri. Later, their complaint was amended to add a claim for damages for conversion of the cattle on the ranch. Bader denied liability and counterclaimed for damages.

Following the presentation of evidence and argument of counsel, the jury returned a special verdict upon which judgment subsequently was entered. That special verdict found that Cerri had tendered performance of their obligations under the agreement, but that performance by Cerri was excused by Bader's repudiation of the agreement. The special verdict

found that the contract price for the ranch, $1,125,000, exceeded the fair market value thereof by $138,425 and that Cerri should recover the latter sum as their "benefit of the bargain." Additionally, the jury, by special verdict, found that Bader had converted Cerri's cattle to Cerri's further damage in the sum of $18,270. Finally, and with regard to the counterclaim, the jury found that Cerri had been unjustly enriched at the expense of Bader by $6,977. This appeal by Bader followed. Cerri, by cross-appeal, contends that the district court erred when it refused to instruct the jury regarding punitive damages.

The agreement for the sale and purchase of the Cerri ranch required Bader to deposit $100,000 in escrow by March 5, 1975, and an additional $100,000 before the close of escrow scheduled for May 27, 1975. Thereafter, Bader was to pay $185,000 by January 1, 1976. The balance of the purchase price ($740,000) was to be paid by Bader assuming liability for an existing Federal Land Bank loan on the Cerri ranch in the amount of $150,000, by conveying their equity in a Sparks residence valued at $90,000, and by transferring timber in Idaho to Cerri, such timber having the estimated value of $500,000.

The initial $100,000 payment was made. Cerri was allowed to withdraw that sum prior to closing, and Cerri allowed Bader to move onto the ranch and place the Bader brand on the cattle prior to closing. Escrow did not close on May 27. The parties, however, continued to treat the agreement as in effect.

Problems arose following Cerri's visit to Idaho to inspect the timber. The agreement provided that if the timber was not worth its asserted value, $500,000, at the time of harvest, Bader would pay Cerri the difference in cash. Cerri was told while in Idaho that the timber was not worth $500,000 and became concerned about this aspect of the agreement. Their concern was voiced to Bader who, in turn, expressed their doubts as to the cattle carrying capacity of the Cerri Ranch. Subsequent discussions and negotiations accomplished nothing.

Cerri commenced this action for breach of contract and moved back onto the ranch, and attempted to move their cattle. Bader, however, refused to abandon their brand until Cerri returned the $100,000 initially placed in escrow. Since Cerri could not sell or pledge the cattle without such a brand release, Cerri posted a $100,000 bond in Bader's favor to secure the release of the cattle, following which Cerri amended their complaint to include a cause of action for conversion.

1. The first assigned error concerns the damage award of $18,270 for the conversion of cattle. In the trial court Cerri

contended that Bader's refusal to release their brand for the period July 1975 to about April 1976 was a conversion of the cattle, and that all damage sustained as a consequence thereof was recoverable. Bader argued below and now before this court that the refusal to release their brand for the stated period of time was at most a trespass to chattels and not a conversion. He therefore asserts that the jury should not have been instructed regarding conversion and that the instruction given was incorrect.

Bader's argument is based primarily upon the definition of conversion found in the Restatement (Second) of Torts § 222A. Conversion is there defined as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."

Using that definition as a premise, Bader argues that since the measure of damages is a part of the definition of conversion, and since Cerri did not seek to recover the full value of the cattle, there was no conversion and the jury should not have been instructed on that theory.

We reject that argument. Nevada case law does not suggest that the measure of damages is a part of the definition of conversion. Neither does Nevada case law declare the full value of the property converted to be the sole measure of damages. Of course, the full value of the property at the time of conversion may be one measure of the damage sustained. Dixon v. Southern Pacific Co., 42 Nev. 73, 172 P. 368, 177 P. 14 (1918). This measure is appropriate when the defendant keeps possession of the property he has converted. This measure of damage, however, is not appropriate when the property is returned by the converter to the injured party. That is what happened in the case at hand.

A conversion occurs whenever there is a serious interference to a party's rights in his property. Wantz v. Redfield, 74 Nev. 196, 326 P.2d 413 (1958). When this happens the injured party should receive full compensation for his actual losses. Boylan v. Huguet, 8 Nev. 345 (1873). The return of the property converted does not nullify the conversion. Such return does serve to mitigate damages. Winkler v. Hartford Acc. and Indem. Co., 168 A.2d 418 (N.J. 1961).

We conclude that it was permissible for the jury to find that a conversion occurred when Bader refused to release their brand

and that the jury instruction quoted in the footnote below was correct.[1]

2.   Next, it is asserted that the award of $18,270 for conversion of the cattle must be annulled since it represents a loss of profits on the sale of cattle which would have occurred but for the conversion, and is speculative and uncertain.

At trial, Cerri urged that Bader's refusal to release the brand on the cattle precluded Cerri from selling or pledging them for almost one year. Thus, they were required to bear additional expense in feeding cattle they would have otherwise sold, and were precluded from pledging those cattle as security for a loan to purchase additional cattle to continue their cow-calf operation. This inability to obtain financing resulted in a loss of profits on the future sale of those additional cattle.

The testimony of Cerri was that but for the conversion he would have purchased 300 pairs (300 cows and 300 calves) for $105,000. By September 1976, each calf would have weighed about 600 pounds. He estimated that ten percent would be lost leaving 270 calves to be sold at a market price of 32 cents per pound for a total of $50,840. After deducting expenses (feed, veterinary care, BLM and U.S. Forest Service permits, etc.), a profit of $28,144 would have been realized.

The rule against the recovery of uncertain damages generally is directed against uncertainty as to the existence or cause of damage rather than to measure or extent. Fireman's Fund Ins. Co. v. Shawcross, 84 Nev. 446, 442 P.2d 907 (1968); Knier v. Azores Constr. Co., 78 Nev. 20, 368 P.2d 673 (1962). However, if there is evidence that damage resulted from the defendant's wrongful act and a reasonable method for ascertaining the extent of damage is offered through testimony, the fact that some uncertainty exists as to the actual amount of damage sustained, does not preclude recovery. Brown v. Lindsay, 68 Nev. 196, 228 P.2d 262 (1951). It is sufficient if the evidence adduced will permit the jury to make a fair and reasonable approximation. Frank Bond & Son, Inc. v. Reserve Minerals Corp., 335 P.2d 858 (N.M. 1959).

[1]Conversion exists where one exerts wrongful dominion over another's personal property or wrongful interference with the owner's dominion. The act constituting "conversion" must be an intentional act, but it does not require wrongful intent and is not excused by care, good faith, or lack of knowledge. Conversion does not require a manual taking. Where one makes an unjustified claim of title to personal property or asserts an unfounded lien to said property which causes actual interference with the owner's rights of possession, a conversion exists.

The Cerri Ranch consists of about 2346 deeded acres with appurtenant BLM permits and is a typical cow-calf operation. It should carry 1000 head of cattle on a 12-month basis. It would appear reasonable for its owners, Cerri, to estimate their loss resulting from the conversion in the manner heretofore related. The jury award was well within their estimate of damage.

3. For two years preceding the conversion, the Cerri Ranch operation had not been profitable. In Knier v. Azores Constr. Co., 78 Nev. 20, 368 P.2d 673 (1962), we held that the Stage Coach Motel, a new business enterprise, could not claim as damages, the loss of prospective profits since such a claim would necessarily rest upon speculation and uncertainty. Bader argues that the *Knier* opinion precludes the award of $18,270 resulting from the conversion of the cattle. The pronouncement of *Knier* does not apply if evidence is received from which a jury reasonably could ascertain lost profits. El Ranco, Inc. v. First National Bank of Nevada, 406 F.2d 1205 (9th Cir. 1968). Such evidence was received in the case at hand. It was not present in *Knier*.

4. We reject out-of-hand the claim that the evidence introduced would not allow the jury to find that Bader repudiated the contract. Our review of the record reveals evidence supportive of the jury finding. Moreover, we summarily deny the contentions that error occurred when the court failed to instruct regarding loss of income and defining "proximately caused damage." Such instructions were not requested. Consequently, we shall not now entertain the complaint that they were not given. City of Reno v. Silver State Flying Serv., 84 Nev. 170, 438 P.2d 257 (1968).

5. The trial court refused to instruct the jury with respect to punitive damages. Cerri, who won the case and was awarded substantial compensatory damages, asks that we affirm the judgment in all respects, but also that we remand the cause for the limited purpose of allowing a jury to determine punitive damages. Of course, the jury has been discharged and could not perform the assignment.

In any event, we dismiss the cross-appeal. A plaintiff is never entitled to punitive damages as a matter of right. Nevada Cement Co. v. Lemler, 89 Nev. 447, 514 P.2d 1180 (1973). The concept of punitive damages rests upon a presumed public policy to punish the wrongdoer for his act and to deter others from acting in similar fashion. Midwest Supply, Inc. v. Waters, 89

Nev. 210, 510 P.2d 876 (1973); Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824 (1962). In short, punitive damages are not to compensate an injured person for the loss sustained, but to punish a defendant for his conduct. Allen v. Anderson, 93 Nev. 204, 562 P.2d 487 (1977).

NRS 42.010 allows punitive damages where a defendant has been guilty of oppression, fraud or malice, express or implied, in an action not arising from contract. Cerri contends that Bader's refusal to release the brand was malicious.

The term malice as used in the statute means malice in fact and denotes ill will, or a desire to do harm for the mere satisfaction of doing it. Nevada Credit Rating Bur. v. Williams, 88 Nev. 601, 503 P.2d 9 (1972). It contemplates willful and intentional conduct done in reckless disregard of possible results. Nevada Cement Co. v. Lemler, supra. It was permissible for the trial judge to conclude that evidence of that character was not received and that the jury should not, therefore, be allowed to consider the question of punitive damages. Village Development Co. v. Filice, 90 Nev. 305, 526 P.2d 83 (1974).

Affirmed. Cross-appeal dismissed.

MOWBRAY, C. J., and GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.