CUSTOM TELECONNECT, INC., Plaintiff,

v.

INTERNATIONAL TELE–SERVICES, INC., Defendant.

No. CV–S–01–0788.

United States District Court, D. Nevada.

March 7, 2003.

---

Counsel for Plaintiff Custom TeleConnect, Inc. are Stephen C. Jensen, Jon W. Gurka, and Payson LeMeilleur of Knobbe, Martens, Olson & Bear, LLP, Irvine, CA.

Counsel for Defendant International Tele-Services, Inc. is Theodore Parker, III, Parker, Nelson & Arin. Las Vegas.

## *ORDER*

DAWSON, District Judge.

Presently, the Court has before it Plaintiff's Motion for Leave to Amend Complaint (# 42) to which Defendant filed a notice of non-opposition (# 47). The Court also has before it Defendant's Motion for Partial Summary Judgment (# 31). Plaintiff filed an opposition (# 32) to which Defendant replied (# 38). The Court has also considered Defendant's Supplement (# 60) and Plaintiff's Motion to Strike the Supplement, or in the Alternative Opposition to Defendant's Supplement (# 62). Additionally before the Court is Defendant's Motion for Summary Judgment (# 57). Plaintiff filed an opposition (# 65) to which Defendant did not reply.

### I. Background

Custom Teleconnect, Inc. ("CTI") is a provider of telecommunications services such as operator support, domestic and international direct dial, international callback, debit card services and directory

assistance ("DA"). Before January of 2001, CTI had been working with Cox Communications ("Cox") to find a way to handle Cox's operator service calls, DA calls and busy line verification interrupt services through CTI's switch and underlying network.

Cox was in dire need of DA service since the company that had been servicing their DA needs was on the verge of ceasing operations. Cox decided to reconnect to CTI's network by January 31, 2001. CTI and Cox began planning the logistics to route the DA calls through CTI's Las Vegas switch. Cox purchased and installed the equipment necessary to reroute the calls.

On January 6, 2001, CTI executed an agreement entitled "Confidentiality non-Disclosure Agreement" ("NDA") with International Tele-services, Inc. d/b/a D.A. for Less ("DAFL"). CTI and DAFL were exploring a potential business relationship in which DAFL would provide directory assistance services on a per-transaction basis to CTI (for CTI customers). Though general discussions had commenced CTI refused to disclose customers, potential customers or other information until a non-disclosure agreement had been executed. After the NDA had been signed, CTI began testing DAFL's capacity to handle the needs of CTI's customers, including Cox, through a special toll free test number.

DAFL prepared the NDA and regularly used such contracts in the daily course of its business. The agreement was signed by CTI with no changes. After signing the document, CTI and DAFL commenced more intensive discussions of prospective business ventures. CTI then provided detailed proprietary and confidential information to DAFL such as the identity of CTI customers and related business information. CTI disclosed the extent of its business relationship with Cox including

details on the transition of DA services to CTI including the urgent need of Cox to reroute its DA calls.

On January 8, 2001, CTI learned that Cox's current DA provider was shutting down immediately. CTI instructed Cox to route all DA traffic through DAFL via the toll free test number. CTI took these actions with the expectation that it would be compensated for routing the DA service through DAFL. If not, it would have routed the business through another vendor.

Immediately following the disclosures by CTI and the routing of Cox business to DAFL through CTI, DAFL, without the knowledge or permission of CTI, approached Cox to establish a separate agreement to provide DA services for Cox. While securing the agreement with Cox, DAFL suggested to Cox that CTI was going to be compensated for CTI's work to that point and for helping DAFL secure a deal with Cox. Additionally, DAFL recognized by letter to CTI that CTI should be compensated for its work and the securing of the Cox business. DAFL never compensated CTI. As a result, CTI filed the present complaint. DAFL has moved for summary judgment in two separate motions seeking to dispose of all six causes of action brought by CTI. The parties dispute whether Georgia law or Nevada law governs the action.

## II. Conflict-of-law

In *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Supreme Court held that the Rules of Decision Act, 28 U.S.C. § 1652, requires a federal court to apply, in diversity cases, the law of the State in which it sits, both statutory law and common law established by the courts. Expanding upon its *Erie* decision, the Supreme Court later held that federal courts sitting in diversity jurisdiction must apply the conflict-of-law

rules prevailing in the states in which they sit. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, this Court must apply Nevada's conflict-of-law rules.

The contract at issue in this case, the NDA, contained a choice-of-law provision wherein the parties agree that the contract would be construed in accordance with the laws of Georgia. Both parties agree that the breach of contract claim in this case is governed by Georgia state law.

Plaintiff, however, disagrees that Georgia state law applies to the rest of its claims. Plaintiff initially contends that its remaining claims arise under tort theories of relief. Plaintiff essentially contends that Nevada courts would apply Nevada state law pursuant to the state's conflict-of-law rules. Nevada has adopted a modified version of the substantial relationship test when addressing conflict-of-law issues concerning tort claims. *See Motenko v. MGM Dist., Inc.*, 112 Nev. 1038, 921 P.2d 933, 935 (1996). Under this test, the law of the forum governs, unless another state has an overwhelming interest. *See id.* An overwhelming interest will exist if two of the following factors are found: (1) it is the place where the conduct giving rise to the injury occurred; (2) it is the place where the injury is suffered; (3) parties have the same domicile, residence, nationality, place of incorporation, or place of business *and* it is different from the forum state; (4) it is the place where the relationship, if any, between the parties is centered. *See id.*

Because Plaintiff filed its complaint in this district, Nevada law governs unless another state has an overwhelming interest. Defendant contends that Georgia has an overwhelming interest because two of the four *Motenko* factors favor Georgia. The Court disagrees and finds that Georgia fully satisfies none of the four factors.

First, the place where the conduct giving rise to the injury occurred partially in Nevada and partially, according to Defendant, in Georgia (where the Court assumes the decision to breach the NDA occurred). However, Defendant has not provided the Court with any evidence via affidavit or deposition testimony to assert this position. Plaintiff has adduced documentary evidence, an affidavit, and deposition testimony that Nevada is the place where the conduct giving rise to the injury occurred. Evidence clearly shows that Defendant took actions in the state of Nevada that gave rise to the injury. Second, the place where the injury was suffered was Nevada as Plaintiff is a Nevada corporation and maintains its principal place of business here. The third factor doesn't apply because Plaintiff's domicile is not different from the forum state thereby precluding the applicability of factor three. Finally, Georgia no more appears to be the place where the relationship was centered than Nevada. By failing to satisfy any of the four factors, Georgia does not have an overwhelming interest. Therefore, Nevada law will apply to Plaintiff's tort claims.

### III. Summary Judgment Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed. R.Civ.P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court need only resolve factual issues of controversy in favor of the nonmoving party where the facts specifically averred by that party contradict facts specifically averred by the movant. *See Lujan v. Nat'l Wildlife Fed'n.,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *see also Anheuser–Busch, Inc. v. Natural Beverage Distribs.,* 69 F.3d 337, 345 (9th Cir.1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air Inc.,* 281 F.3d 1054, 1061 (9th Cir.2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### A. Breach of Contract

■ Under Georgia law a contract is "an agreement between two or more parties for the doing or not doing of some specified thing." Ga.Code Ann. § 20–101. In order to establish a claim for breach of contract, a party must establish the breach and resulting damage. *See* 7 Ga. Jur. *Business and Commerical Law: Contracts* § 5:35. A breach occurs when a party is bound by a provision to do some act and without legal excuse declines to do so. *See CCE Fed. Credit Union v. Chesser,* 150 Ga.App. 328, 258 S.E.2d 2, 4 (1979).

In this case, CTI has alleged that DAFL was bound by the NDA to keep certain information confidential and to use it only for the purpose of evaluating business prospects with CTI. CTI has alleged that DAFL breached the agreement by using the information to seek out and form a separate business relationship with Cox. DAFL contends that the contract is not enforceable because it so vague and indefinite that the intentions of the parties cannot be defined. DAFL also contends that the kind of information CTI seeks to protect cannot be proprietary, because it is public knowledge readily available through independent investigation. The Court does not agree.

■ Generally, the party responsible for drafting a contract is ordinarily charged with knowledge of its terms and meaning. *See Hughes Aircraft Co. v. N. Am. Van Lines, Inc.,* 970 F.2d 609, 612 (9th Cir.1992)(citing *American Ry. Express Co. v. Daniel,* 269 U.S. 40, 42, 46 S.Ct. 15, 15–16, 70 L.Ed. 154 (1925)). The deposition testimony and affidavits provided by the non-movant, CTI, clearly contradict the assertions of DAFL that the contract is vague and indefinite. First, DAFL drafted the contract at question and regularly used it in the course of its business. Second, the timing and circum-

stances surrounding the agreement do not support the assertions that the contract is vague. Finally, DAFL has not asserted that it was unaware of the contract's terms, intent and meaning. Therefore, the Court finds that the contract is enforceable.

 DAFL has asserted that the information sought to be kept confidential was publicly available and readily ascertainable by independent investigation. According to DAFL, such information cannot be protected by contract as proprietary information. *See Numed, Inc. v. McNutt,* 724 S.W.2d 432 (Tex.Civ.App.1987). However, in Georgia, the courts have clearly established the test to determine whether a non-disclosure covenant is enforceable. Generally, covenants in the restraint of trade may be enforced if reasonable as to time and not overly broad in proscribing activities. *See Durham v. Stand-by Labor of Ga.,* 230 Ga. 558, 198 S.E.2d 145, 148 (1973). Reasonableness of a non-disclosure clause turns on factors of time and the nature of the business interest to be protected. *Id.* at 149. The reasonableness of the clause is a question of fact determined by first, whether the employer was attempting to protect confidential information relating to the business, such as "...trade secrets, methods of operation, *names of customers,* personnel data...", and second, whether the restraint of trade is reasonably related to the protection of the information. *Id.* at 150–51 (italics added). Georgia has determined that such data is often highly confidential and a valuable asset. *Id.* at 151.

In this case, CTI sought to keep confidential the names of its customers and potential customers and only revealed that information for the express purpose of establishing a business relationship with DAFL. Georgia courts have held that non-disclosure clauses aimed at preventing the kind of harm alleged by CTI are not per

se unreasonable. *See, e.g., Equifax Services, Inc. v. Exam. Mgmt. Serv. Inc.,* 216 Ga.App. 35, 453 S.E.2d 488, 491(1994)(holding that non-disclosure clause that required non-disclosure agreement to last forever as per se unreasonable); *Physician Specs. In Anesthesia, P.C. v. MacNeill,* 246 Ga.App. 398, 539 S.E.2d 216, 225 (2000)(finding attempt to maintain confidentiality of customer list for two years reasonable, especially where the duty not to disclose related to use for competitive purposes). In this case, the non-disclosure clause limits the agreement to three years, and is aimed at keeping the parties from competing with each other based on the confidential information. Therefore, the Court finds that CTI has established genuine issues of material fact regarding the reasonableness of the NDA that preclude the granting of summary judgment.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

DAFL essentially argues that if a contract is unenforceable you cannot breach the covenant of good faith and fair dealing. Having found genuine issues of material fact precluding the granting of summary judgment on the claim for breach of contract, the Court denies Defendant's motion for summary judgment on this issue.

### C. Intentional Interference with Prospective Economic Advantage

 In order to establish a claim for interference with prospective economic advantage in Nevada, a plaintiff must establish the following elements: 1) a prospective contractual relationship between the plaintiff and a third party; 2) the defendant's knowledge of this prospective relationship; 3) the intent to harm the plaintiff by preventing this relationship; 4) the absence of privilege or justification by

the defendant; and 5) actual harm to the plaintiff as a result. *See Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 734 P.2d 1221, 1225 (1987). Privilege or justification can exist when defendant acts to protect his own interests. *Id.* at 1226.

 DAFL moves for summary judgment alleging that its behavior was proper free competition and privileged based on the holding of *Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 591 P.2d 1135 (1979). However, while the Nevada Supreme Court has held that free competition is a significant privilege or justification for interference with prospective economic advantage, the court has not given competitors carte blanche in their dealings with each other. *See id.* at 1136–37. The *Crockett* court held that the gravamen of this cause of action is that the interference be unlawful or resort to improper means. Thus, a competitor is privileged to divert business to itself by all fair and reasonable means. *See id.* at 1136 (quoting Prosser, *Torts* (4th ed.1971) p. 954). Therefore, a plaintiff must show that the means used to divert the prospective advantage was unlawful, improper or was not fair and reasonable.

CTI has proffered evidence by affidavit and deposition testimony that DAFL breached the NDA. That breach led directly to the diversion of the economic advantage, in this case, the Cox DA business. The alleged breach would be conduct that was improper, unfair and unreasonable. Therefore, the Court finds that CTI has established genuine issues of material fact that preclude summary judgment on this cause of action.

### D. Unjust Enrichment

 In Nevada, the essential elements of a quasi contract are a benefit conferred on the defendant by plaintiff, appreciation of the benefit by defendant, and acceptance and retention of the benefit by the defendant in circumstances in which it would be inequitable to retain the benefit without payment. *See Leasepartners Corp., Inc. v. Robert L. Brooks Trust*, 113 Nev. 747, 942 P.2d 182, 187 (1997). An action may not be based on unjust enrichment where there is an express written agreement. *See id.* Defendant attacks Plaintiff's complaint suggesting that Plaintiff is playing fast and loose with the Court by claiming in its initial pleading that unjust enrichment occurred when Defendant allegedly breached the NDA. Defendant suggests that the Court should grant summary judgment on this cause of action, because breach of the NDA cannot constitute unjust enrichment.

 Federal Rule of Civil Procedure 8(a) states that "[a] pleading which sets forth a claim for relief...shall contain...a short and plain statement of the claim showing that the pleader is entitled to relief." The federal rules "do not require a claimant to set out in detail the facts upon which he bases the claim." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All evidentiary facts and legal theories need not be pleaded. *See Leatherman* at 168–69. Courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims. *Id.* The goal is to give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See id.*

Plaintiff is not playing fast and loose with this Court. In this case, CTI has used deposition testimony and affidavits to establish factual issues that support a claim for unjust enrichment. Defendant has been given fair notice of Plaintiff's claims and the grounds upon which the claims rest. Additionally, CTI does not claim Defendant has been unjustly enriched from breach of the NDA. CTI's claim is that it conferred a benefit on DAFL by delivering Cox as a customer to

**1182**

DAFL. The NDA is not the basis of the unjust enrichment claim. Therefore, Plaintiff has established genuine issues of material fact regarding their claim for unjust enrichment. Summary judgment on this issue is precluded.

### E. Unfair Competition

■ Defendant contends that an unfair competition claim always involves the passing off of goods as if from another. However, Defendant does not cite any case law for its contention. It does cite *Golden Nugget, Inc. v. Am. Stock Exchange, Inc.*, 828 F.2d 586, 591 (9th Cir.1987) for the proposition that such a claim must allege some deception or appropriation of plaintiff's property. Defendant contends Plaintiff has not alleged deception or appropriation of Plaintiff's property. Since the tort of unfair competition is extremely flexible and has been defined very broadly, the Court finds that Defendant has not met his burden in alleging that unfair competition always involves the passing off of goods. *See id.* Additionally, CTI has shown through affidavit and deposition testimony that it can support allegations of deception or appropriation of Plaintiff's property. Therefore, genuine issues of material fact preclude summary judgment.

### F. Conversion

■ Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Wantz v. Redfield*, 74 Nev. 196, 326 P.2d 413, 414 (1958). Further, conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge. *See id.; Bader v. Cerri*, 96 Nev. 352, 609 P.2d 314, 317 n. 1 (1980). Whether Nevada law specifically permits conversion to be based on intangible property has not been clearly decided. Courts have traditionally refused to recognize conversion of intangible assets that are not merged with something more tangible. *See Thrifty-Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559, 54 Cal.Rptr.2d 468, 472 (Cal.Ct.App.1996). Plaintiff has not pointed to any Nevada case that allows for a conversion claim based on the misappropriation of confidential information. Plaintiff's other causes of action are more appropriate avenues to seek relief. This Court declines to extend the scope of conversion beyond tangible property rights. Therefore, Defendant's motion for summary judgment on this cause of action is granted.

### IV. Preemption under NRS § 600A.090(1)

■ Defendant argues that Plaintiff's common law tort claims: breach of implied covenant of good faith and fair dealing, wrongful interference with prospective economic advantage, unfair competition, unjust enrichment, and conversion are all preempted by the Uniform Trade Secrets Act ("UTSA"). Since the statute does not replace contractual remedies the cause of action for breach of implied covenant of good faith and fair dealing is not preempted under the UTSA. *See* NRS § 600A.090(2)(a); *Frantz v. Johnson*, 116 Nev. 455, 999 P.2d 351, 358 n. 4 (2000).

■ The information to be kept confidential in this case was not a "trade secret" as defined by UTSA.[1] In this case,

---

1. UTSA defines a trade secret as "information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code" that derives independent economic value from not being known, or readily ascertainable, and is subject to efforts to maintain its secrecy. NRS § 600A.030(5).

the information would have been ascertainable by a competitor or other member of the public with reasonable diligence. The difference in this case is that DAFL did not obtain that information on its own. Instead, it willingly signed a nondisclosure agreement and then usurped that information for its own purposes in violation of the agreement. As stated in *Frantz,* "There may be future instances where a plaintiff will be able to assert tort claims, including interference with prospective advantage...that do not depend on the information at issue being deemed a trade secret, and thus are not precluded by the UTSA." *Frantz* at 358 n. 3. This is such a case, because the underlying claims do not rely solely on facts concerning misappropriation of trade secrets. *See id.* Therefore, Plaintiff's common law tort claims are not preempted by UTSA.

## V. *Motion to Amend*

Plaintiff has moved to amend to add new corporate entities springing off Defendant's corporation. Defendant has not opposed this motion, thus, leave to amend is freely granted by this Court.

## VI. *Motion to Strike*

Plaintiff has moved to strike Defendant's supplement (# 60) which raised the issue of preemption of the claims subject to Defendant's motion for partial summary judgment under UTSA after briefing had been closed. However, in the interest of judicial economy the Court has considered the Supplement (# 60) and Plaintiff's opposition (# 62). The Court can consider the issue *sua sponte,* and consideration of the supplement and opposition gave the parties an opportunity to be heard. *See Frantz* at 357. Therefore, Plaintiff's motion to strike is denied.

## VII. *Conclusion*

Accordingly, IT IS ORDERED that Plaintiff's Motion for Leave to Amend Complaint (# 42) is GRANTED;

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment (# 31) is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (# 57) is DENIED; and

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike the Supplement (# 62) is DENIED.