JEEP CORPORATION, a Nevada Corporation; AMERI-
CAN MOTORS CORPORATION, a Foreign Corpora-
tion; CAL-VADA AUTO, a Nevada Corporation,
Appellants and Cross-Respondents, v. OWEN
PATRICK MURRAY, Respondent and Cross-
Appellant.

No. 15354

October 29, 1985 708 P.2d 297

[Rehearing denied February 11, 1986]

*Lionel, Sawyer & Collins* and *David N. Frederick,* Las Vegas;
*Erickson, Thorpe, Swainston & Cobb,* Reno, for Appellants and
Cross-Respondents Jeep Corporation and American Motors Cor-
poration.

*Shamberger, Georgeson, McQuaid & Thompson,* Reno; *Sala,
McAuliffe, White & Long,* Reno, for Appellant and Cross-
Respondent Cal-Vada Auto.

*Peter Chase Neumann* and *Kathryn Landreth,* Reno, for
Respondent and Cross-Appellant.

*Beckley, Singleton, DeLanoy & Jemison,* Las Vegas, for Motor
Vehicle Manufacturers Association of the United States and Prod-
uct Liability Advisory Council, Amici Curiae.

*David Gamble,* Carson City; *Michael Starr,* Washington, D.C.; and *Daniel F. Sullivan,* Seattle, Washington, for American Trial Lawyers Association, Amicus Curiae.

## OPINION

By the Court, BERKSON, D. J.:[1]

In March, 1978, respondent Owen Patrick Murray (Murray) purchased a 1970 Jeep CJ-5 which had previously been sold by appellant Cal-Vada Auto. On August 19, 1978, Murray drove the Jeep to visit a friend at her family's ranch, located some 60 miles from Wells, Nevada. Murray left the ranch around midnight, traveling along North Ruby Valley Road. A witness later testified that Murray's speed as he drove away was consistent with her own prudent driving habits.

Early the next morning, about one-quarter mile from the point Murray was last seen, he was found unconscious, lying about 25 feet from the edge of the road. About 75-80 feet from the road lay

---

[1]The Governor designated The Honorable Lester H. Berkson, Judge of the Ninth Judicial District Court, to sit in place of JUSTICE JOHN C. MOWBRAY, who voluntarily disqualified himself. Nev. Const., art. 6, § 4.

the Jeep, upside down, with its ignition and tape deck still on. Evidence at the scene suggested the vehicle had swerved from side to side before going off the road. There were apparently no witnesses to the accident and Murray, who suffered a severe brain injury, has no memory of what happened. As a result of the accident, Murray, then 21 years old and a college forestry student, was rendered paraplegic.

Murray filed suit against Cal-Vada and the vehicle's manufacturers, appellants Jeep Corporation and American Motors Corporation. He alleged that appellants were strictly liable in tort for the manufacture and sale of a defective product and for misrepresentation concerning the product. In substance, Murray contended that the design of the Jeep CJ-5 rendered it inherently uncontrollable and unstable. He claimed that appellants, despite their knowledge of the vehicle's characteristics, failed to warn consumers about them and, indeed, represented that the vehicle could be used safely in a variety of demanding driving conditions. His complaint prayed for an award of compensatory and punitive damages.

After a four-week trial, a jury returned a verdict of $815,000 in Murray's favor. No punitive damages were awarded because of the district court's refusal to give an instruction on that claim. On appeal, appellants challenge a number of the district court's rulings. Murray has cross-appealed, assigning error to the district court's refusal to instruct the jury on punitive damages. For the reasons stated below, we affirm the judgment in its entirety.

## THE APPEAL

### I. The Causation Issue

Appellants first contend that they were entitled to judgment as a matter of law because Murray failed to establish that any defect in the vehicle caused the accident. They argue that Murray's accident reconstruction expert, Dr. Michael Kaplan, lacked an adequate factual foundation for his opinions and was therefore incompetent to testify concerning the cause of the accident. Apart from Dr. Kaplan's testimony, appellants argue, there was insufficient evidence of causation to satisfy Murray's burden of proof.

While we have held that an expert may not base an opinion on mere speculation or conjecture, we are satisfied that the facts on which Dr. Kaplan relied were not of this character. Dr. Kaplan carefully examined the accident scene and the physical evidence still there. He spoke with persons present at the scene on the morning the accident was discovered. These persons pointed out the location where Murray was found and the spot at which the Jeep came to rest. They also described the tire marks left by the

Jeep as it swerved out of control. To assess the damage done to the vehicle, Kaplan examined the appraiser's damage report and photographs taken of the vehicle after the accident. He also spoke with a subsequent owner of the Jeep, who had repaired it. Finally, the record reflects that Dr. Kaplan was familiar with the handling and rollover characteristics of the Jeep CJ-5, based upon his review of highway accident statistics, his study of other Jeep accidents, and his observation of numerous rollover tests involving the CJ-5.

On this basis, Kaplan concluded that Murray's Jeep began to roll while the vehicle was traveling at a speed of 25-30 miles per hour, that the rollover occurred while the Jeep was still on the road, and that the rollover was the result of the Jeep's defective design. While these conclusions, and the investigation which produced them, have been strenuously attacked by appellants, we believe the points raised affected only the weight and credibility of Kaplan's testimony, not its admissibility. *See* Krehnke v. Farmers Union Co-op. Ass'n, 260 N.W.2d 601, 607-08 (Neb. 1977). On the record before us, we are not persuaded that the district court abused its discretion in allowing Dr. Kaplan to testify.

[Headnote 2]

What we have said, of course, largely disposes of appellants' claim that there was insufficient evidence of causation. Even apart from Dr. Kaplan's reconstruction testimony, however, there was evidence upon which the jury could reasonably find causation. Murray produced evidence that the Jeep CJ-5 is highly susceptible to loss of control and rollover. For example, tests described by Dr. Kaplan indicate that the CJ-5 can overturn during an avoidance maneuver, on a flat surface, at speeds as low as 28 miles per hour. Although Murray's speed at the time he lost control is unknown, there was evidence that he was a habitually careful driver who never exceeded the speed limit and had never been cited for a moving traffic violation.[2] It appears that the road over which Murray was traveling was flat, straight, and devoid of any "tripping" mechanism at the location of the accident. There is no indication that Murray was physically or mentally impaired at the time the accident occurred. Although appellants have suggested a number of alternative causes of the accident, Murray was not required to negate them. Stackiewicz v. Nissan Motor Corp., 100 Nev. 443, 447, 686 P.2d 925, 927 (1984). The

---

[2]While appellants now challenge the admissibility of evidence concerning Murray's driving habits, the record reflects that appellants failed to register a timely objection to testimony on this point. Accordingly, appellants will not be heard to raise the issue here. Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 52-53, 623 P:2d 981, 983-84 (1981).

evidence he produced, though circumstantial, sufficiently established causation. *Id.* at 452, 686 P.2d at 930. The credibility of that evidence was a matter for the jury. *Id.* "In this case, as in most cases, positive proof either way is not available. Inferences must be drawn from the best available evidence produced by each side." Shoshone Coca-Cola v. Dolinski, 82 Nev. 439, 444, 420 P.2d 855, 858 (1966).

Appellants were not entitled to judgment as a matter of law; their motions for dismissal and for judgment notwithstanding the verdict were thus properly denied. *Stackiewicz,* 100 Nev. at 447, 686 P.2d at 927 (application for judgment n.o.v. should be refused where there is evidence tending to support the verdict); Roche v. Schartz, 82 Nev. 409, 412, 419 P.2d 779, 780 (1966) (where motion for dismissal pursuant to NRCP 41(b) is made, evidence must be interpreted in light most favorable to plaintiff).

## II. *Seat Belt Evidence*

Murray's Jeep was equipped with seat belts. Prior to trial, the district court entered an order excluding all evidence concerning the presence and use of the belts. Appellants claim this was error. We cannot agree.

At the outset, we have serious doubts about the relevance of the evidence. Appellants argue, for example, that Murray's asserted failure to use his seat belt was relevant to show comparative negligence. Pending a legislative declaration to the contrary, however, we have refused to apply notions of comparative fault to the context of strict products liability. *See generally* Young's Machine Co. v. Long, 100 Nev. 692, 692 P.2d 24 (1984).

Whether the evidence was relevant or not, we believe that the district court acted properly in excluding it. Due to the circumstances of the accident, it was by no means clear whether Murray had used his seat belt. The fact that Murray was ejected from the vehicle, of course, indicated that he was not wearing the belt. On the other hand, Murray was prepared to present evidence that he habitually used the seat belt, that the belt unlatched during the accident due to the design of the latching mechanism, and that this itself was a defect in the vehicle. Also in dispute was the question of whether Murray's injuries might have been avoided had the seat belt been worn.

As the district court concluded, injection of these issues into the case would have entailed substantial expert testimony and a corresponding increase in the length of the trial. Given the difficulties of proof, the district court undoubtedly concluded that litigating these questions would have confused the jury and

unduly emphasized a single, relatively insignificant aspect of the accident. A trial court is vested with discretion to simplify the issues and limit the number of expert witnesses allowed to testify. NRCP 16.[3] The court is likewise authorized to exclude even relevant evidence if its probative value is substantially outweighed by the danger that it will confuse the issues, mislead the jury, or result in undue delay. Southern Pac. Transp. Co. v. Fitzgerald, 94 Nev. 241, 243, 577 P.2d 1234, 1235 (1978); NRS 48.035.[4] We find no abuse of discretion in the district court's action.[5]

### III. *Evidence of Subsequent Warnings*

Several years after Murray's accident occurred, appellants sent warning stickers to all known owners of Jeep CJ-5 vehicles. These warned of the lack of occupant protection provided by the CJ-5's top and doors, as well as the possibility of loss of control caused by "sharp turns and abrupt maneuvers." Appellants contend that the warnings should not have been admitted into evidence.

In Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 470 P.2d 135 (1970), we held that post-accident repair orders, though not admissible to show negligence, were admissible to prove the existence of a defect "or any other necessary element" of a cause of action sounding in strict liability. 86 Nev. at 416, 470 P.2d at 139-40. Appellants argue that our holding in *Ginnis* has been vitiated by the subsequent enactment of NRS 48.095 and our recent decision in Jacobson v. Manfredi, 100 Nev. 226, 679 P.2d 251 (1984).

NRS 48.095 provides in substance that evidence of subsequent

---

[3]In pertinent part, NRCP 16 provides:

> In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider
> > (1) The simplification of the issues;
> > . . . .
> > (4) The limitation of the number of expert witnesses;
> . . . .

[4]NRS 48.035 provides, in relevant part:

> 1. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury.
> 2. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

[5]Our conclusion on this point also answers appellants' contention that the district court erred in excluding evidence of owner's manual warnings suggesting the use of seat belts.

remedial measures "is not admissible to prove negligence or culpable conduct."[6] The rationale underlying this statute, which is similar to others adopted in many jurisdictions, is that tort-feasors will be deterred from taking remedial measures after an accident if they believe that evidence of such measures may later be used against them.

We believe that NRS 48.095 has no application here. By its terms, the statute comes into play only where negligence or other "culpable" conduct is alleged. *See* Schelbauer v. Butler Mfg. Co., 673 P.2d 743, 747 (Cal. 1984); Ault v. International Harvester Company, 528 P.2d 1148, 1150-51 (Cal. 1975); Burke v. Almaden Vineyards, Inc., 150 Cal.Rptr. 419, 421 n. 2 (Cal.App. 1978) (construing statute similar to NRS 48.095). In a strict liability action, of course, culpability in the sense of fault need not be established. *See Ginnis,* 86 Nev. at 413, 470 P.2d at 138; *Shoshone Coca-Cola,* 82 Nev. at 441, 420 P.2d at 857. Had the legislature, in enacting NRS 48.095, intended "culpable" to denote simple legal responsibility, without regard to fault, we think it would have expressed its intention in unequivocal terms.

Additionally, it seems to us that the policy considerations which underlie NRS 48.095 are less compelling in the situation presented here than in the typical negligence case. Where the plaintiff has been injured by a defect in a sidewalk, for example, it may be realistic to suppose that the potential defendant will avoid making repairs, fearing that they might be construed as an admission of fault. But this assumption is not valid where the defect is in a product manufactured by the thousands. In such a case, "it is manifestly unrealistic to suggest that [the] producer will forego making improvements in its product, and risk innumerable additional lawsuits and the attendant adverse effect upon its public image, simply because evidence of . . . such improvement may be admitted in an action founded on strict liability for recovery on an injury that preceded the improvement." *Ault,* 528 P.2d at 1152. Accordingly, while decisions on the subject are by no means unanimous, we believe the better rule is to allow admission of post-accident remedial measures in an action based upon strict liability. *See, e.g., Schelbauer,* 673 P.2d at 746-48 (post-accident warning); Siruta v. Hesston Corp., 659 P.2d 799,

---

[6]NRS 48.095:

> 1. When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.
> 2. This section does not require the exclusion of evidence of subsequent remedial measures when offered for another purpose, such as proving ownership, control, feasibility of precautionary measures, or impeachment.

809 (Kan. 1983) (design change); D.L. by Friederichs v. Heubner, 329 N.W.2d 890, 903-05 (Wis. 1983) (design change and warning); Caldwell v. Yamaha Motor Co., Ltd., 648 P.2d 519, 525 (Wyo. 1982) (design change); Caprara v. Chrysler Corp., 417 N.E.2d 545, 551 (N.Y. 1981) (design change); Robbins v. Farmers Union Grain Terminal Ass'n, 552 F.2d 788, 793 (8th Cir. 1977) (warning); Shaffer v. Honeywell, Inc., 249 N.W.2d 251, 257 n. 7 (S.D. 1976) (design change); Ault, 528 P.2d 1148 (design change).[7]

Nothing in our decision in *Jacobson, supra,* is to the contrary. There, the plaintiff's case went to the jury on theories of strict liability *and negligence.* Application of NRS 48.095 was therefore appropriate. It was unnecessary for us to decide whether the statute should also apply to the strict liability claim, because we determined that the evidence in question was admissible in any event under the "feasibility exception" of NRS 48.095(2). 100 Nev. at 231, 679 P.2d at 255.

■■■

Accordingly, we conclude that the district court did not err in admitting evidence of the post-accident warnings issued by appellants.[8]

IV. *Jury Instructions*

Appellants attack, on several grounds, the jury instructions given by the district court. We need not describe appellants' arguments in detail. It suffices to say that, having reviewed the instructions as a whole, we are satisfied that the jury was sufficiently and fairly instructed. *See* Gordon v. Hurtado, 96 Nev. 375, 380, 609 P.2d 327, 330 (1980); Hotels El Rancho v. Pray, 64 Nev. 591, 628-29, 187 P.2d 568, 586 (1947).

■■■

Appellants also challenge the district court's refusal to give their proposed instruction on comparative negligence. For reasons we have previously stated, the district court acted properly. *See* Young's Machine Co. v. Long, *supra.*

---

[7]We note that products liability claims are frequently submitted to the jury on both strict liability and negligence theories. In such a case, it may be appropriate for the trial court to instruct the jury that evidence of remedial measures may not be considered by the jury in its determination of the negligence claim. *See Robbins,* 552 F.2d at 795. This is an issue, however, that we need not and do not resolve.

[8]By our holding, we do not limit the authority of the court to exclude evidence of post-accident remedial measures if it concludes that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice or confusion of the issues. *See* NRS 48.035.

 ██ ██

Finally, appellants contend that the district court erred in refusing to instruct the jury that warnings need not be given against dangers which are generally known. While this is certainly true as a general proposition of law, *see* General Electric Co. v. Bush, 88 Nev. 360, 365, 498 P.2d 366, 369 (1972), there was no evidentiary basis for the instruction here. Although Murray agreed with defense counsel that the CJ-5 "handled a little differently" than an ordinary passenger vehicle, there is no indication that he was aware of the Jeep's propensity to overturn. Nor is there any evidence that consumers generally were aware of the danger.[9] A party is entitled to an instruction on every theory of his case that is supported by the evidence. Beattie v. Thomas, 99 Nev. 579, 583, 668 P.2d 268, 271 (1983). Conversely, where such evidence is absent, the instruction should not be given. *Id.* at 583-84, 668 P.2d at 271; Village Development Co. v. Filice, 90 Nev. 305, 312-13, 526 P.2d 83, 87 (1974). We think this was the situation here.

## V. *"Coercion" of the Jury's Verdict*

Shortly after the jury returned its verdict in this matter, several of the jurors contacted appellants' trial counsel. They complained that they were "exhausted and upset" by the jury's deliberations and that they did not agree with the verdict.[10] Counsel brought this to the attention of the district court, requesting that further proceedings be stayed pending an inquiry into the matter. The court denied this request, concluding that the jurors' complaints did not justify a hearing.

 ██ ██

We believe the district court acted appropriately. As a general rule, jurors will not be permitted to impeach their own verdict. Weaver Brothers, Ltd. v. Misskelley, 98 Nev. 232, 233, 645 P.2d 438, 439 (1982); Close v. Flanary, 77 Nev. 87, 113-14, 360 P.2d 259, 273 (1961); Priest v. Cafferata, 57 Nev. 153, 157, 60 P.2d

---

[9]Dr. John Habberstad, a defense witness, opined that the handling characteristics of the CJ-5 would become apparent "very quickly" to one driving the vehicle. When pressed, however, Dr. Habberstad qualified his opinion:

> By Mr. Neumann: Q. Now, do you think that the average user who does not have the experience, training and knowledge of a person like yourself would realize on just driving the vehicle around, that it overturns a lot more easily than a passenger car?
> A. Sir, I can't say what the average person knows or doesn't know.

[10]The jury was polled by the district court at the time the verdict was returned. Of the three jurors who later complained, two affirmatively responded that this was their verdict; the reporter's transcript fails to reflect the response of the third juror.

220, 221 (1936). Even if the allegations made here were true, they would not have warranted a new trial. *See Close,* 77 Nev. at 113-14, 360 P.2d at 273.

## THE CROSS-APPEAL

On cross-appeal, Murray challenges the district court's refusal to instruct the jury on the issue of punitive damages.[11] He also contends that the district court erred in excluding certain evidence allegedly relevant to this issue. We need not address the latter contention, because we have determined that, even if the evidence had been admitted, it was not sufficient to warrant an instruction on punitive damages.

NRS 42.010 provides for an award of exemplary damages where the defendant "[h]as been guilty of oppression, fraud or malice, express or implied."[12] "Oppression" is present where the plaintiff has been subjected to "cruel and unjust hardship in conscious disregard of his rights." Richardson v. Employers Liability Assurance Corp., 102 Cal.Rptr. 547, 556 (Cal.App. 1972), *overruled on other grounds,* Gruenberg v. Aetna Insurance Company, 510 P.2d 1032 (Cal. 1973). "Malice" means malice in fact. *See* Warmbrodt v. Blanchard, 100 Nev. 703, 709, 692 P.2d 1282, 1286 (1984); Bader v. Cerri, 96 Nev. 352, 359, 609 P.2d 314, 318 (1980); Caple v. Raynel Campers, Inc., 90 Nev. 341, 344, 526 P.2d 334, 336 (1974); Village Development Co. v. Filice, 90 Nev. 305, 315, 526 P.2d 83, 89 (1974). In this context, malice in fact may be established by a showing that the defendant consciously and deliberately disregarded known safety measures in reckless disregard of the possible results. *See* Leslie v. Jones Chemical Co., 92 Nev. 391, 393, 551 P.2d 234, 235 (1976).

In arguing that such a showing was made here, Murray principally relies upon a series of "rollover tests" conducted by Jeep Corporation and American Motors Corporation prior to the date

---

[11]The issue of punitive damages affects only Jeep Corporation and American Motors Corporation; the district court dismissed Murray's punitive damages claim against appellant Cal-Vada Auto. The propriety of that dismissal is not challenged here.

[12]In pertinent part, NRS 42.010 provides:

In an action for breach of an obligation not arising from contract, where the defendant . . . [h]as been guilty of oppression, fraud or malice, express or implied . . . the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

of the accident. Contrary to Murray's assertion, however, none of these tests demonstrated the CJ-5's "dangerous tendency to roll over in flat-surface, on-road driving." Cross-Appellant's Opening Brief, at 11. One test, for example, required several men to lift the vehicle and roll it down an incline. In another test, the vehicle was placed sideways on a "sled," which was then accelerated to a substantial speed. The unrestrained vehicle was thrown off when the sled was abruptly stopped. Only in this sense, then, were these "rollover tests."

Nothing else Murray points to in the evidence indicates that Jeep or American Motors acted in "conscious disregard" of the rights of consumers or that they consciously and deliberately disregarded known safety measures. *Richarson, supra; Leslie, supra.* Accordingly, we conclude that the district court did not err in refusing to give a punitive damages instruction. *Warmbrodt, supra; Bader, supra;* Beattie v. Thomas, *supra.*

## CONCLUSION

We have carefully considered the remaining contentions of the parties and find them to be without merit. The judgment of the district court is therefore affirmed.

Springer, C. J., and Gunderson, Steffen, and Young, JJ., concur.