944 P.2d 1036 (1997)
133 Wash.2d 414
Gary HYJEK, Appellant,
v.
ANTHONY INDUSTRIES (K-2 corporation), Respondent.
No. 64326-1.
Supreme Court of Washington, En Banc.
Argued March 12, 1997.
Decided October 9, 1997.
Miracle, Pruzan, Pruzan & Baker, Howard Pruzan, James Baker, Seattle, for appellant.
Garvey, Schubert & Barer, Joanne Blackburn, Robert Stephenson, Seattle, for respondent.
Lane, Powell, Spears & Lubersky, Michael Reilly, Seatle, Thorsrud, Crane & Paulich, Russell Love, Seattle, for amicus Washington Defense Trial Lawyers.
Debra Stephens, Spokane, Harbaugh & Bloom, Gary Bloom. Spokane, Bryan Harnetiaux, Spokane, amicus for Washington State Trial Lawyers Ass'n.
MADSEN, Justice.
Plaintiff Gary Hyjek brought an action claiming design defect against Anthony Industries' subsidiary, K2 Corporation (K2), as a result of an injury he sustained while using a K2 snowboard. Plaintiff contends the trial court's decision excluding evidence of subsequent remedial measures relating to the binding retention system of K2's snowboards was error. We affirm.

STATEMENT OF THE CASE
K2 Corporation (K2), a subsidiary of Anthony Industries, designs, manufactures, and markets snowboards and other winter sports equipment. In 1990, K2 marketed a snowboard model called the "Dan Donnelly XTC." Ex. 6. The Dan Donnelly XTC was sold without bindings, allowing customers to affix their bindings of choice. K2 did not pre-drill the snowboard for bindings. Without a pre-set hole pattern, the purchaser could install his choice of any bindings on the market by simply screwing them into the snowboard. Coarse threaded screws were screwed directly into a fiberglass retention plate in the snowboard's core to affix the bindings ultimately chosen by the customer.
Plaintiff purchased a Dan Donnelly XTC and was injured on March 24, 1991, while *1037 using the snowboard. He testified that the binding came loose from the snowboard, which then struck his inside left ankle. In 1993, Plaintiff sued Anthony Industries, claiming the snowboard as designed was not reasonably safe in that it provided for the affixing of bindings to the snowboard by means of threaded screws which foreseeably could and did prove to be an inadequate and unsafe binding retention method.
In 1992, K2 began to design a new binding system involving "through-core inserts" molded into the snowboard. Fine threaded screws were then screwed into the inserts to hold the bindings in place. Clerk's Papers (CP) at 34-35. Plaintiff sought to enter into evidence K2's subsequent change in design to support his claim for design defect.
K2 brought a motion in limine to exclude evidence of subsequent remedial measures pursuant to Evidence Rules (ER) 402, 403, and 407 and the motion was granted. A jury returned a special verdict in favor of K2.[1] Plaintiff appealed to Division One of the Court of Appeals, arguing that ER 407 does not apply to strict product liability cases, and the evidence of subsequent measures should have been admitted. We accepted certification from the Court of Appeals.

DISCUSSION
The issue in this case is whether ER 407, which provides that a party may not introduce evidence of subsequent remedial measures to establish culpable conduct or negligence, applies in products liability cases where strict liability is alleged. ER 407 provides:
When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.
Washington's Evidence Rule is identical to former Federal Evidence Rule 407[2] and codifies the common law doctrine which excludes evidence of subsequent remedial measures as a proof of an admission of fault.[3] Wash. Evid. R. 407 advisory committee note; see also Cochran v. Harrison Mem'l Hosp., 42 Wash.2d 264, 254 P.2d 752 (1953).
Courts justify the exclusion of such evidence because it is not relevant and it may discourage development of safety measures. Regarding relevancy, courts have found that evidence of a subsequent repair is of little probative value, since the repair may not be an admission of fault. See Columbia & Puget Sound R.R. Co. v. Hawthorne, 144 U.S. 202, 207-08, 12 S.Ct. 591, 592-93, 36 L.Ed. 405 (1892) (the Supreme Court reasoned that evidence of subsequent remedial measures could not be used to prove negligence because such evidence is irrelevant, confusing to the jury, and prejudicial to the defendant). Rule 407 is a rejection of the notion that *1038 "`because the world gets wiser as it gets older, therefore it was foolish before.'" Fed. R.Evid. 407 advisory committee note (quoting Hart v. Lancashire & Yorkshire Rya. Co., 21 L.T.R.N.S. 261, 263 (1869)). A manufacturer may change a product's design for many other reasons besides the existence of a defect. Washington courts have excluded such evidence on the basis of relevancy. See Bartlett v. Hantover, 84 Wash.2d 426, 526 P.2d 1217 (1974); Aldread v. Northern Pac. Ry. Co., 93 Wash. 209, 160 P. 429 (1916); Wash. Evid. R. 407 advisory committee note.
While the historical use of relevancy as the basis for excluding evidence of subsequent remedial measures as evidence of negligence is well established, the more widely accepted basis for exclusion appears to be the social policy rationale of encouraging safety precautions. Karl B. Tegland, 5 Wash. Prac. Evidence § 131, at 471 (3d ed.1989); see also Codd v. Stevens Pass, Inc., 45 Wash.App. 393, 725 P.2d 1008 (1986). The Federal Advisory Committee Note to Rule 407 specifically indicates a distinct preference for this rationale. Fed.R.Evid. 407 advisory committee note. The expressed concern is that the introduction of such evidence may provide a disincentive for people to take safety precautions. Rule 407 seeks to advance the public policy of encouraging people to take steps in furtherance of added safety by freeing them from the fear that such steps will be used against them in a future lawsuit. Carter v. City of Seattle, 21 Wash. 585, 59 P. 500 (1899); see also Wash. Evid. R. 407 advisory committee note.
Although the rule clearly applies in products liability actions based in negligence, where the claim seeks recovery under theories of strict liability, the applicability of Rule 407 varies from state to state[4] and across the federal circuits. Neither the text of Washington's rule nor the Advisory Committee's Note addresses the issue of whether Rule 407 should apply to strict product liability actions. See Wash. Evid. R. 407 advisory committee note. Additionally, Washington courts have not squarely addressed this question. See Haysom v. Coleman Lantern Co., 89 Wash.2d 474, 573 P.2d 785, 93 A.L.R.3d 86 (1978).[5]
*1039 In the federal circuits, a solid majority apply Rule 407 in products cases where strict liability is alleged and exclude evidence of subsequent remedial measures only where an exception applies. The First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Ninth Circuits each has applied Rule 407 in strict products liability cases.[6] Only the Eighth and Tenth Circuits allow evidence of subsequent remedial measures to be admitted in strict product liability actions.[7]
The debate in the federal courts, however, has recently been answered. Federal Evidence Rule 407 has been amended, adopting the view of the majority of the federal courts, providing that "evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction." (emphasis added). Amend. Fed.R.Evid. 407. (Westlaw 1997).[8]
Plaintiff asks this court to adopt the reasoning of those courts finding that ER 407 does not apply to strict products liability actions and find that the trial court erred in excluding evidence of subsequent remedial measures. Finding the majority of federal courts holding that ER 407 applies to actions based in strict liability persuasive and considering the recent amendment to the Federal Rule, we decline to reverse the trial court's decision.
Plaintiff relies primarily on the California Supreme Court's decision in Ault v. International Harvester Co., 13 Cal.3d 113, 528 P.2d 1148, 117 Cal.Rptr. 812, 74 A.L.R.3d 986 (1974), which was one of the first to admit evidence of subsequent remedial measures in a strict liability action. The Ault court reasoned that the public policy considerations underling the rule were not valid in strict products liability cases, and held that a plaintiff may use evidence of a subsequent remedial measure to prove a defect. The court found inapplicable the goal of encouraging repairs in the case of mass produced products. Id., 528 P.2d at 1152, 117 Cal.Rptr. at 816. A mass producer, the court reasoned, would not "risk innumerable additional lawsuits and the attendant adverse effect upon its public image" merely to avoid admission of the evidence in the first lawsuit. Id. The threat of future increased liability for failure to remedy a product defect is a sufficient impetus to encourage the mass producer to take remedial actions. Id. Therefore, the court concluded, exclusion of subsequent remedial actions only provides "a shield against potential liability." Id.
*1040 The Ault court also considered whether the phrase "culpable conduct" included the actions of manufacturers who were sued under strict liability. Id. at 1151, 117 Cal.Rptr. at 815. If the Legislature had intended to apply the rule to strict liability, the court asserted, a phrase without the connotation of "affirmative fault" would have been used. Id.
The Ault court's dual rationale, that the additional impetus of exclusion is unnecessary to encourage remedial action in a products liability case and that culpable conduct does not apply to strict liability actions, has been followed by numerous state courts and in early federal court decisions concerning ER 407. See e.g., Robbins v. Farmers Union Grain Terminal Ass'n, 552 F.2d 788, 793 (8th Cir.1977); Herndon v. Seven Bar Flying Serv., Inc., 716 F.2d 1322 (10th Cir.1983); Ford Motor Co. v. Fulkerson, 812 S.W.2d 119, 125 (Ky.1991); Sanderson v. Steve Snyder Enter., Inc., 196 Conn. 134, 491 A.2d 389, 395 (1985); McFarland v. Bruno Mach. Corp., 68 Ohio St.3d 305, 626 N.E.2d 659, 663 (1994).
Expanding on the courts' reasoning in Ault, the Nevada Supreme Court held that the rule "comes into play only where negligence or other `culpable' conduct is alleged." Jeep Corp. v. Murray, 101 Nev. 640, 708 P.2d 297, 302 (1985). Strict liability, the court stated, does not include either of those issues. Id. In a products liability case the focus is on the defect in the product, not on any culpable acts of the manufacturer. Id. Because there is no negligent conduct to influence in strict products liability cases the rule does not apply. Id; see also Caldwell v. Yamaha Motor Co., 648 P.2d 519, 524 (Wyo. 1982) (since due care or culpability is not at issue in a strict liability action, the exclusionary rule was not applicable).
We, however, agree with the majority of the federal circuits rejecting these arguments and applying the exclusionary rule to actions brought under a theory of strict products liability. The reasoning employed by the Fourth Circuit in Werner v. Upjohn Co., 628 F.2d 848 (4th Cir.1980), exemplifies the rationale followed by the majority. In Werner, the court found that, regardless of the theory used to require a manufacturer to pay damages, the deterrent to taking remedial measures is the same, namely, the fear that the evidence may ultimately be used against the defendant. Id. at 856-57.
Werner acknowledged that ER 407 does not mention the use of remedial measures to prove strict liability and that some courts have used the rule's silence to conclude that strict liability must be an unstated exception. Id. at 856. However, keeping in mind the precept that admission could defeat the goal of encouraging repairs, the Werner court emphasized that the rules of evidence contain many "gaps" and that where the rules are silent, common law principles should be applied to fill in the gaps and achieve the policy objectives of Congress. Id.
With a view towards encouraging development of safety enhancements, the court focused on whether distinctions between negligence and strict liability warrant different treatment under rule 407. Id. at 857. The rationale behind the rule, the court explained, is that people generally will not take actions that can be used against them. Id. The court recognized the difference between negligence and strict liability: in negligence the focus is on the defendant and in strict liability it is on the product. Id. Nevertheless, the Werner court found this distinction "hypertechnical" because the suit is against the manufacturer, not against the product, "regardless of theory." (Emphasis added). Id. Therefore, the court concluded, the policy of encouraging remedial measures by excluding repair evidence will be served as effectively in strict liability as in negligence. In neither case does the manufacturer want to be liable, and the assumption that he will not take steps which can be used against him remains undisturbed. Id.
The Werner court went on to explain that the fallacy in the Ault court's mass producer rationale is it assumes a defect in the product. Werner, 628 F.2d at 857; see e.g., Ault, 528 P.2d at 1151-52, 117 Cal.Rptr. at 815-16. Furthermore, it completely ignores the situation where a manufacturer decides to improve his nondefective product. Id. at 1152, 117 Cal.Rptr. at 816. Where the earlier version of the product is not defective, the *1041 court said, the manufacturer who takes the precautionary measure of improving his product after an accident risks the imposition of liability as a result of that decision. Id. Clearly, this would violate Rule 407's public policy of not deterring remedial action.
Additionally, this mass-producer rationale, the court explained, could apply equally to all products liability actions, regardless of whether the suit is in negligence, strict liability or warranty theory, because the distinction is not based on the theory of the suit but whether the product involved was mass produced. Id; see also Smyth v. Upjohn Co., 529 F.2d 803 (2d Cir.1975) (per curium) (noting fallacy in the mass producer rationale because the argument has equal force in negligence actions). The court pointed out that an exception for mass producers could "effectively override Rule 407" because it would encompass all product liability cases.[9]See Werner, 628 F.2d at 857. Courts adopting the mass producer rationale fail to offer a basis for concluding that a manufacturer sued under strict liability would be any more inclined to take subsequent remedial measures without benefit of the rule than would a producer sued under negligence theory. Id. at 858.
As the Werner court noted, when Congress adopted Rule 407, plaintiffs had been bringing products liability suits against manufacturers under negligence theory for many years. Strict liability, in contrast, was a relatively new concept. If Congress had intended to exclude any cases involving mass-produced products, negligence cases involving such products would have been a likely target for exception. Indeed, as the Werner court discerned, Congress specifically decided to exclude evidence of remedial measures to prove negligence, regardless of whether the item in question was mass-produced. Id. Thus, the fact of mass production does not warrant admission of remedial measures in strict liability actions. Id.
Soon after the Fourth Circuit's decision in Werner, other circuits began adopting that court's approach. See Cann v. Ford Motor Co., 658 F.2d 54 (2d Cir.1981) (court found congressional purpose of not deterring remedial measures applicable to strict liability cases); Gauthier v. AMF, Inc., 805 F.2d 337 (9th Cir.1986) (no practical difference between strict liability and negligence in defective design cases and public policy rationale to encourage remedial measures remains the same); Flaminio v. Honda Motor Co., 733 F.2d 463, 467 (7th Cir.1984) (Judge Posner notes "`test for an `unreasonably dangerous' condition is equivalent to a negligence standard of reasonableness ....'") (quoting Birchfield v. International Harvester Co., 726 F.2d 1131, 1139 (6th Cir.1984)).
Courts have also emphasized the irrelevance of evidence of subsequent remedial measures and have declined to admit it in a strict products liability action. In Grenada Steel Indust. Inc., v. Alabama Oxygen Co., 695 F.2d 883 (5th Cir.1983), the Fifth Circuit stated the probative nature of such evidence was "based on little direct evidence of why manufacturers make product changes" and that the decision to apply ER 407 to strict liability actions "rests more firmly on the proposition that evidence of subsequent repair or change has little relevance to whether the product in question was defective at some previous time." Id. at 887.
The differences between theories of negligence and strict liability are not significant enough to require different approaches when viewed against the goal of encouraging manufacturers to implement safety measures. Instead, the focus must be on the realistic implications of applying the exclusionary rule in strict products liability cases. From a defendant's point of view, it does not matter what kind of action the plaintiff brings. Rather, the manufacturer's focus will be on the fact that if it makes any repairs or safety improvements to its product, evidence of those repairs may be used at trial to show the product was defectively designed. Thus, failing to apply the exclusionary rule in strict liability actions will have the same deterrent affect on subsequent remedial measures as in a negligence case.
*1042 Further, admitting evidence of subsequent remedial measures in strict liability cases while excluding such evidence in negligence actions will, as the court suggested in Werner, create "gaps" through which irrelevant and prejudicial evidence may be admitted. The Second Circuit in Cann noted that plaintiffs "frequently" bring an action under both negligence and strict liability theories. See Cann, 658 F.2d at 60. If a defendant could admit evidence of subsequent remedial measures pursuant to the strict liability count, the beneficial effect of the rule is lost. Id.
We are also unpersuaded by the mass producer rationale advocated by a minority of the courts, as this argument could apply equally to actions based in negligence. Moreover, the Washington Rules of Evidence have not made an exception for mass producers in actions brought under a theory of negligence. The fact of mass production does not support a different result in a strict liability setting.
Additionally, the language of Washington's Product Liability Act (WPLA) supports our conclusion that ER 407 applies to strict products liability actions. The proper application of a state's equivalent of Federal Rule 407 to strict liability actions should be consistent with the state's law regarding determination of the point in time for assessing liability for a defective product. To do otherwise could impact the substantive law. See Randolph L. Burns, Note, Subsequent Remedial Measures and Strict Products Liability: A NewRelevantAnswer To An Old Problem, 81 Va. L.Rev. 1141, 1146 (1995).
If the time of product distribution or manufacture is the point selected by the Legislature for determining liability in strict liability cases, then the substantive law makes any product knowledge acquired after the point of distribution irrelevant. See id. By contrast, if the law assigns the time of trial as the point at which to measure the product against the legal standard for defectiveness, subsequent repairs may be relevant to determining liability. See id.
Admitting evidence of subsequent remedial measures when the time of distribution is selected, therefore, means the manufacturer is held responsible for product knowledge outside the ambit of the strict liability scheme. In other words, the evidence rule shapes the substantive law by expanding the scope of liability.
Id.
Washington's Products Liability Act explicitly provides that products are to be evaluated "at the time of manufacture" when examining a design defect or a failure to warn claim.[10] RCW 7.72.030(1)(a) and (b). RCW 7.72.030(1)(a) states:
A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product.
(Emphasis added). RCW 7.72.030(1)(a).
Thus, the focus in a strict products liability action brought under the WPLA is whether the product was defective at the time it left the manufacturer's control. The introduction of evidence of subsequent remedial modifications may confuse the jury by diverting its attention from whether the product was defective at the time the product was manufactured to some later point in time. For this reason, as well as those discussed *1043 above, we find that evidence of subsequent remedial measures should not be admitted in a strict products liability action absent an exception under ER 407.
In this case, none of the exceptions listed in the Rule was offered to support admission of K-2's later modifications. Therefore, evidence of subsequent remedial measures was correctly excluded in this case.
DURHAM, C.J., and DOLLIVER, GUY, ALEXANDER and SANDERS, JJ., concur.
TALMADGE, Justice (dissenting).
Despite the specific language of ER 407 and RCW 7.72.030(1)(a) regarding a plaintiff's burden of proof in a product liability claim involving unsafe product design, the majority determines that changes in the design of a product occurring after a plaintiff's injury may not be introduced in evidence. The majority ignores the specific language of ER 407 and fails to evaluate the elements of a product liability claim for unsafe product design in Washington. For these reasons, I respectfully dissent.
K2, a subsidiary of the defendant Anthony Industries, Inc. (K2), marketed a snowboard model in 1990 called the Dan Donnelly XTC (XTC). K2 used a particular design for bindings on this model of snowboard. In 1991, Hyjek was injured while using the XTC. He later sued K2, claiming the XTC snowboard was unsafe because it had a design defect. In 1992, K2 began using a new binding system for snowboards like the XTC. At trial, Hyjek sought to introduce K2's change in design through the testimony of Gavin Myers, a designer K2 hired in 1992 to prepare the new snowboard design. K2 successfully moved in limine to exclude such evidence, but Hyjek's attorney was permitted to draw pictures of certain aspects of the binding inserts used in the XTC and other snowboards for illustrative purposes. Experts testifying at the request of the parties indicated the new design was feasible at the time K2 originally manufactured the XTC snowboard.
A. ER 407
ER 407 states:
When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.
The traditional justification for ER 407 is twofoldrelevance and policy. Postaccident changes in a product may be irrelevant to a particular manufacturer's reasons for changing the product design. As a matter of policy, the admissibility of postaccident changes may discourage appropriate safety measures. Both of these grounds have been criticized in the context of product liability claims based on strict liability. Haysom v. Coleman Lantern Co., Inc., 89 Wash.2d 474, 482-83, 573 P.2d 785 (1978); Ault v. International Harvester Co., 13 Cal.3d 113, 528 P.2d 1148, 1150, 117 Cal.Rptr. 812 (1974).
The principal grounds for excluding such evidence has been the policy of encouraging safety measures. Karl B. Tegland, 5 Wash. Prac. § 131 at 471 (1989); Codd v. Stevens Pass, Inc., 45 Wash.App. 393, 406, 725 P.2d 1008 (1986). We criticized this rationale in Haysom:
The policy justification for the rule of exclusion appears to have little force in the context of the typical products liability action. Those who urge departure from the traditional rule all argue it is implausible to assume a manufacturer would risk liability in numerous future cases, as well as potential loss of customer goodwill, by failing to alter a defective product because such alterations might be admissible against it in a single action.
89 Wash.2d at 483, 573 P.2d 785. Instead, in Haysom, given concerns about relevancy of postaccident remedial measures, we chose to avoid a universal rule in product cases, acknowledging a case-by-case weighing of relevance of such evidence to be preferable. *1044 This remains the sounder approach. See Haysom, 89 Wash.2d at 483-84, 573 P.2d 785.
The majority finds support for its bright-line rule in the language of ER 407 and the federal circuit cases. This support is shakier than the majority suggests. The language of the rule pertains solely to negligence actions. It does not bear upon actions under RCW 7.72, Washington's product liability act. Moreover, it is noteworthy that the Advisory Committee on Evidence to the Standing Committee on the Federal Rules of Evidence has specifically recommended language in the federal counterpart rule to ER 407 applying the rule to product liability claims. See Report of the Judicial Conference, Committee on Rules of Practice and Procedure, Agenda F-18 ( Rules Appendix G-4), September 1996, attachment to Br. of Amicus Curiae, Washington Defense Trial Lawyers. This change in the federal rule, upon which our own rule is based, makes explicit the fact that ER 407 may not presently apply to claims of strict product liability. In interpreting ER 407 and its federal counterpart, we must assume that the amendments were designed to change the rule, that is, to apply ER 407 in strict liability cases where it did not previously apply. See Id., Agenda F-18 at 20 (indicating under the proposed changes "Rule 407 (Subsequent Remedial Measures) would be amended to extend the exclusionary principle expressly to product liability actions..." (Emphasis added)). See also State v. Carlson, 65 Wash.App. 153, 157, 828 P.2d 30, review denied, 119 Wash.2d 1022, 838 P.2d 690 (1992) (by changing the language of a statute, the Legislature is presumed to intend a change in the law); State v. Greenwood, 120 Wash.2d 585, 592, 845 P.2d 971 (1993) (when interpreting court rules, Supreme Court employs principles of statutory construction); State v. Wachter, 71 Wash. App. 80, 856 P.2d 732 (1993), review denied, 123 Wash.2d 1014, 871 P.2d 599 (1994) (court rules are to be interpreted in the same manner as statutes).
Despite the majority's suggestion that a "solid majority" of federal circuits apply ER 407 to strict liability cases, Majority op. at 1039, the majority's citations of authority in its opinion indicate that, at present, there is a substantial split in the federal and state courts regarding the applicability of ER 407 to actions in product liability. See Majority op. at 1038 n. 4, and 1038-1039 nn. 6-7. See also Randolph L. Burns, Note, Subsequent Remedial Measures and Strict Products Liability: A NewRelevantAnswer to an Old Problem, 81 VA. L. REV. 1141, 1141-43, and nn.5 and 8 (1995) (collecting cases and designating which states and federal circuits allow admission of subsequent remedial measures evidence in products liability actions and which do not). However, we do not need to decide if ER 407 invariably excludes admission of postaccident remedial changes in the product design, even though I believe the better rule is to evaluate such matters in products claims on a case-by-case basis. By its terms, ER 407 permitted introduction of Gavin Myers' testimony here.
B. Postaccident Design Changes Are Relevant in Actions Under WPLA
The more significant flaw in the majority's analysis, however, is that subsequent changes in the design of the product are relevant to the question of whether, at the time of the manufacture of the product, the design of the product was feasible and practical. By its terms, ER 407 is not a universal rule of exclusion and permits admission of postaccident product changes where such remedial measures are relevant to such issues as "proving ownership, control, or feasibility or precautionary measures, if controverted, or impeachment." Similarly, RCW 7.72.050(1) makes it clear that subsequent remedial measures may be relevant to the question of the technological feasibility of the product design.
In order to prove a claim for a design defect in a product, the Washington product liability act at RCW 7.72.030(1)(a) states:
A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible *1045 would have on the usefulness of the product[.]
(Emphasis added.) See also Connor v. Skagit Corp., 99 Wash.2d 709, 715, 664 P.2d 1208 (1983) (in a products liability case alleging a defective design, the existence of an alternative, safe design is a factor the jury may consider in determining whether a product is unreasonably dangerous).
In the present case, K2 conceded that the design of the XTC snowboard advocated by the plaintiff was feasible in 1990 when it initially began the manufacture of the product. Although K2 conceded the feasibility of the alternative design to the XTC snowboard in 1990, it never conceded the practicality of such an alternative design. Hyjek was entitled to introduce evidence of the practicality of the alternative design of the XTC snowboard in 1990 through Gavin Myers. The testimony of K2's own designer of the XTC snowboard was plainly relevant to the practicality and feasibility of the alternative design in 1990. The fact that K2 ultimately decided to use this alternative design in snowboards after 1992 spoke volumes as to its practicality. It was plainly relevant for purposes of ER 401-403, as we held in an analogous setting in Haysom:
Respondents stipulated in their trial brief to the feasibility of putting additional warnings on the stove (presumably for the purpose of precluding testimony as to subsequent changes on this basis), see Bartlett v. Hantover, supra; however, they then went on to both argue and present testimony to the effect that more detailed warnings would not be an effective labeling technique and that attaching the contents of the brochure to the stove would not be practical. While this testimony may arguably have been directed to the feasibility of change, it was also directed toward the adequacy of existing warnings. In such a situation it has been held to be within the trial court's discretion to allow evidence of subsequent changes. Haysom, 89 Wash.2d at 484, 573 P.2d 785.
The introduction of subsequent remedial measures by Hyjek was not intended to establish liability on the part of K2, but was relevant to the question of whether the alternative design to the XTC was both feasible and practical. RCW 7.72.030(1)(a). ER 407, which may not apply to actions under RCW 7.72 by its own terms, permits the introduction of such evidence for the purpose of proving feasibility or practicality. The jury was entitled to hear the evidence of Gavin Myers on this subject and the exclusion of the evidence was prejudicial to Hyjek's case. I would reverse the trial court's judgment and order a new trial.
JOHNSON and SMITH, JJ., concur.
NOTES
[1] In a special verdict form the jury answered as follows:

Question No. 1: Did the defendant supply a product which was not reasonably safe as designed or because adequate warnings or instructions were not provided with the product?
Answer "yes" or "no"
Answer: No.
Clerk's Papers (CP) at 110.
[2] While this case was pending Federal Evidence Rule 407 was amended.
[3] Washington cases follow the rule, allowing the introduction of subsequent remedial measures for purposes other than proving liability such as proving ownership, control, or feasibility of precautionary measures, or impeachment. See Brown v. Quick Mix Co., 75 Wash.2d 833, 454 P.2d 205 (1969) (feasibility); Peterson v. King County, 41 Wash.2d 907, 252 P.2d 797 (1953) (on nature of conditions existing at the time of the incident); Cochran v. Harrison Mem'l Hosp., 42 Wash.2d 264, 254 P.2d 752 (1953) (dictum on issue on control of an instrumentality); Hatcher v. Globe Union Mfg. Co., 170 Wash. 494, 16 P.2d 824 (1932) (feasibility). These "other purposes" for which subsequent remedial measures may be admitted must be controverted in order to avoid the introduction of evidence under false pretenses. Wash. Evid. R. 407 advisory committee note. Although evidence of subsequent remedial measures may be admissible under one of the exceptions to Wash. Evid. R. 407, the evidence will not be admitted unless it is relevant as proof upon the actual issues in the case. Wash. Evid. R. 407 advisory committee note.
[4] For state courts applying ER 407, or equivalent, to strict products liability actions, see Davis v. International Harvester Co., 167 Ill.App.3d 814, 118 Ill.Dec. 589, 594, 596, 521 N.E.2d 1282, 1287, 1289 (1988); Krause v. American Aerolights, Inc., 307 Or. 52, 762 P.2d 1011, 1013 (1988); Kallio v. Ford Motor Co., 407 N.W.2d 92, 97-98 (Minn.1987); Rix v. General Motors Corp., 222 Mont. 318, 723 P.2d 195, 202 (1986); Voynar v. Butler Mfg. Co., 463 So.2d 409, 411, 413 (Fla.Dist.Ct.App.1985); Troja v. Black & Decker Mfg. Co., 62 Md.App. 101, 488 A.2d 516, 522 (1985); Hallmark v. Allied Prods. Corp., 132 Ariz. 434, 646 P.2d 319, 325-26 (1982); Hohlenkamp v. Rheem Mfg. Co., 134 Ariz. 208, 655 P.2d 32, 37-39 (1982); Moldovan v. Allis Chalmers Mfg. Co., 83 Mich.App. 373, 268 N.W.2d 656, 660 (1978); see also Benson v. Tennessee Valley Elec. Coop., 868 S.W.2d 630, 642 (Tenn.Ct.App.1993) (construing statute that explicitly excludes evidence of subsequent remedial measures in strict liability cases). Cf. Siruta v. Hesston Corp., 232 Kan. 654, 659 P.2d 799, 808-09 (1983). For states admitting evidence of subsequent remedial measures, see Caterpillar Tractor Co. v. Beck, 624 P.2d 790, 793-94 (Alaska 1981); Ault v. International Harvester Co., 13 Cal.3d 113, 528 P.2d 1148, 1150, 117 Cal.Rptr. 812, 814, 74 A.L.R.3d 986 (1974); Sanderson v. Steve Snyder Enters., 196 Conn. 134, 491 A.2d 389, 396 (1985); Ford Motor Co. v. Fulkerson, 812 S.W.2d 119, 126 (Ky.1991); Carey v. General Motors Corp., 377 Mass. 736, 387 N.E.2d 583, 587-88 (1979); Pollard v. Ashby, 793 S.W.2d 394, 402-03 (Mo.Ct. App.1990); Jeep Corp. v. Murray, 101 Nev. 640, 708 P.2d 297, 302 (1985); Caprara v. Chrysler Corp., 52 N.Y.2d 114, 417 N.E.2d 545, 551, 436 N.Y.S.2d 251, 256 (1981); McFarland v. Bruno Mach. Corp., 68 Ohio St.3d 305, 626 N.E.2d 659, 664 (1994); Matsko v. Harley Davidson Motor Co., 325 Pa.Super. 452, 473 A.2d 155, 159 (1984); Shaffer v. Honeywell, Inc., 249 N.W.2d 251, 257 n. 7 (S.D.1976); D.L. v. Huebner, 110 Wis.2d 581, 329 N.W.2d 890, 905 (1983); Caldwell v. Yamaha Motor Co., 648 P.2d 519, 525 (Wyo.1982). For statutory schemes that admit evidence of subsequent remedial measures; see Alaska R. Evid. 407; Haw. R. Evid. 407; Tex.R. Civ.Evid. 407(a); Me. R. Evid. 407 (Maine also specifically allows the admission of subsequent remedial evidence even in negligence cases).
[5] The court's decision in Haysom v. Coleman Lantern Co., 89 Wash.2d 474, 573 P.2d 785, 93 A.L.R.3d 86 (1978), is not decisive on the issue presented to this court. The court declined to adopt a rule of "universal admissibility of subsequent remedial measures" in a strict products liability action but did not categorically bar the admission of such evidence in a strict products liability action. Id. at 483-84, 573 P.2d 785. The court's decision in Haysom was made prior to the adoption of the Washington Rules of Evidence and prior to the passage of the Products Liability Act. Professor Tegland noted "there was no fixed rule of admissibility or inadmissibility in strict liability cases before the adoption of the Evidence Rules." Tegland, 5 Wash. Prac. § 132 at 475 (discussing Haysom).
[6] See In re Joint E. Dist. & S. Dist. Asbestos Litig., 995 F.2d 343, 345 (2d Cir.1993); Kelly v. Crown Equip. Co., 970 F.2d 1273, 1275 (3d Cir.1992); Raymond v. Raymond Corp., 938 F.2d 1518, 1522-24 (1st Cir.1991); Chase v. General Motors Corp., 856 F.2d 17, 21-22 (4th Cir.1988); Gauthier v. AMF, Inc., 788 F.2d 634, 637-38 (9th Cir.1986); Flaminio v. Honda Motor Co., 733 F.2d 463, 469-70 (7th Cir.1984); Grenada Steel Indust. Inc. v. Alabama Oxygen Co., 695 F.2d 883, 888-89 (5th Cir.1983); Josephs v. Harris Corp., 677 F.2d 985, 990-91 (3d Cir.1982); Hall v. American S.S. Co., 688 F.2d 1062, 1066-67 (6th Cir.1982); Cann v. Ford Motor Co., 658 F.2d 54, 59-60 (2d Cir.1981); Werner v. Upjohn Co., 628 F.2d 848, 852-58 (4th Cir.1980); Bauman v. Volkswagenwerk Aktiengesellschaft, 621 F.2d 230, 232 (6th Cir.1980); Roy v. Star Chopper Co., 584 F.2d 1124, 1134 (1st Cir.1978); see also Dollar v. Long Mfg., 561 F.2d 613, 618 (5th Cir.1977) (admitting evidence of post-accident warning about backhoe for limited purpose of impeachment). While the District of Columbia has never ruled on the issues, in an unofficial reported district court case the court indicated that it would exclude such evidence in a strict products liability case. See Dine v. Western Exterminating Co., No. 86-1857-OG, 1988 WL 28241, at *2 (D.C.C.1988) (stating that "[t]he majority of circuits perceive no distinction between strict liability and negligence cases that renders inapplicable the policy underlying Rule 407[and] ... [t]his Court is persuaded by the majority.")
[7] See Burke v. Deere & Co., 6 F.3d 497, 506 (8th Cir.1993); Huffman v. Caterpillar Tractor Co., 908 F.2d 1470, 1480-81 (10th Cir.1990); Donahue v. Phillips Petroleum Co., 866 F.2d 1008, 1013 (8th Cir.1989); Herndon v. Seven Bar Flying Serv., Inc., 716 F.2d 1322, 1331 (10th Cir.1983); Unterburger v. Snow Co., 630 F.2d 599, 603 (8th Cir.1980); Robbins v. Farmers Union Grain Terminal Ass'n., 552 F.2d 788, 793 (8th Cir.1977). These cases have been superseded by amendment to Federal Evidence Rule 407.
[8] The rule is effective Dec. 1, 1997, absent Congressional action.
[9] As was the case in Werner, a products liability case may be brought under negligence theory, strict liability theory, or warranty theory. See Werner, 628 F.2d at 851.
[10] In its amicus brief before this court, the Washington State Trial Lawyers Association (WSTLA) cites Ayers v. Johnson & Johnson, 117 Wash.2d 747, 818 P.2d 1337 (1991) for the proposition that hindsight is used in assessing whether a product is defective under the Product's Liability Act. However, WSTLA's reliance on Ayers is misplaced because the court in Ayers was addressing an argument that the phrase "likelihood that the product would cause the claimant's harm or similar harms" supported defendant's argument that foreseeability was an element of a failure to warn claim. Id. at 764, 818 P.2d 1337 (citing RCW 7.72.030(1)(a)). The court held that "forseeability" of harm was a negligence concept which was not part of the strict liability law of failure to warn. Id. Here the court is not concerned with the foreseeability of the harm but with the defective nature of the product which the language of the statute clearly indicates should be assessed "at the time of manufacture." RCW 7.72.030(1)(a).